**BUHL v. KAVANAGH, Collector of Internal Revenue.**

No. 8800.

Circuit Court of Appeals, Sixth Circuit.

March 14, 1941.

Rollin Browne, of New York City, and John M. Hudson, of Detroit, Mich. (William D. Mitchell and Mitchell, Taylor, Capron & Marsh, all of New York City, and Bulkley, Ledyard, Dickinson & Wright, of Detroit, Mich., on the brief), for appellant.

Harry Marselli, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and Edward First, Sp. Assts. to Atty. Gen., and John C. Lehr, of Detroit, Mich., on the brief), for appellee.

Before HICKS, HAMILTON, and MARTIN, Circuit Judges.

HAMILTON, Circuit Judge.

Appellant, Lydia Mendelssohn Buhl, appeals from a judgment dismissing her petition against appellee, Giles Kavanagh, Collector of Internal Revenue, for refund of income taxes which she claims to have overpaid for the calendar years 1931 to and including 1935, in the aggregate sum of $78,673.93.

The applicable statutes are Revenue Act of 1928, ch. 852, 45 Stat. 791, Sec. 166, 26 U.S.C.A. Int.Rev.Acts, page 407, which provides that where the grantor of a trust has at any time during the taxable year, either alone or in conjunction with any person not a beneficiary of the trust, the power to reinvest in himself title to any part of the corpus of the trust, then the income arising from the trust estate is taxable to the grantor; and Section 167, 26 U.S.C.A. Int.Rev.Acts., page 407, which provides where any part of the income of a trust may in the discretion of the grantor of the trust, either alone or in conjunction with any person not a beneficiary of the trust, be distributed to the grantor or to be held to be accumulated for future distribution to him, the income of the trust shall be included in computing the net income of the grantor. The Revenue Act

318

of 1932, ch. 209, 47 Stat. 169, Sec. 166, 26 U.S.C.A. Int.Rev.Acts, page 543, is also applicable and provides that where at any time during the taxable year the power to revest in the grantor title to any part of the corpus of the trust is vested (1) in the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of such part of the corpus or income therefrom or, (2) in any person not having a substantial adverse interest in the disposition of such part of the corpus or income therefrom, the income of such part of the trust for such taxable year shall be included in computing the net income of the grantor; and Section 167, 26 U.S.C.A. Int.Rev. Acts, page 543, which provides (a) where any part of the income of a trust (1) is or in the discretion of the grantor, or of any person not having a substantial adverse interest in the disposition of such part of the income may be held or accumulated for future distribution to the grantor, or (2) may in the discretion of the grantor, or any person not having a substantial adverse interest in the disposition of such part of the income, be distributed to the grantor, then the income of the trust shall be included in computing the net income of the grantor.

The Revenue Act of 1934 is also involved, ch. 277, 48 Stat. 680, Sections 166 and 167, 26 U.S.C.A. Int.Rev.Code, §§ 166, 167, which statutes for the purposes of this case are substantially the same as in the Revenue Act of 1932.

On March 24, 1921, the settlor, Louis Mendelssohn, appellant's father (she being an infant at that time), established a written trust for her benefit with his wife, Evelyn Mendelssohn, and Security Trust Company of Detroit, trustees. He transferred to the trust various stocks, securities, cash and choses in action. In the trust instrument, the trustees were compelled to distribute to appellant a minimum of $300 per month of the income of the trust and had the discretionary power to distribute any part of the remainder to her. The accumulated income was to be paid to her when she reached the age of thirty-five and the corpus when she reached the age of fifty. In the event of her death before reaching the age of fifty years, the corpus and its accumulations were to be held for the benefit of and paid to her issue, and if she had none, to the settlor and her mother, or if one was dead, to the other. During his life, the settlor had the sole power to direct the sale, invest-

ment and reinvestment of the securities in the corpus of the trust, also the power to terminate the trust on written notice to the trustee, and also the power at any time to name himself or any other person, firm or corporation as successor trustee.

The settlor reserved the right to alter or amend the trust in any way including his last will and testament, with the sole exception that no such alteration should deprive appellant of the contingent right to have the trust estate conveyed to her, if and when she reached the age of fifty years.

The right to terminate the trust was reserved in paragraph 4(c) and also in paragraph 8 of the trust instrument, in the former without qualifying language, but in the latter it could be terminated either (a) at the option of the settlor by giving written notice thereof to the trustee in which event all of the trust estate was to be conveyed to the beneficiary if of age and if an infant, to her guardian, or at the settlor's option to be conveyed to him as trustee of the beneficiary; or (b) by the death of the beneficiary, in which event, the corpus of the trust and its accumulations should be held by the trustee until the youngest of her surviving children should reach the age of thirty years and in the meantime, the income of the trust was to be paid to her surviving children, in convenient installments. In the event the beneficiary died without issue, the accumulated unexpended income of the trust estate was to be paid to her legal heirs and the corpus of the trust to revert to the settlor, if living. If deceased, one-third was to be paid to Evelyn Mendelssohn, the settlor's wife and the other two-thirds to his heirs. In the event of the predecease of Evelyn Mendelssohn, the corpus of the trust was to be distributed to her lawful heirs.

On November 10, 1921, the settlor, by a letter to the trustee, in conformity with paragraph IV(c) of the trust instrument (which gave him the power to terminate) added Section "E" to said paragraph, which added section provided that the settlor should have the power from time to time to withdraw such moneys as he may have expended or should thereafter expend for the education or support of Lydia Mendelssohn, and should not be obliged to account for such amounts and that his directions regarding such withdrawals should be final and binding upon the depository trustee, the trustees, and the beneficiary of the

trust. In this letter he stated he was terminating the trust.

On April 12, 1923, in another letter in which he referred to the above letter of November 10, 1921, he again stated he was terminating the trust and re-creating it in all respects except that sub-division (c) of paragraph IV was changed to provide that he (the settlor) should have the power to terminate the trust in whole or in part at any time upon giving written notice to the trustee.

On April 20, 1923, the settlor again wrote the trustee that he terminated the trust insofar as it related to 1,650 shares of new common stock of Fisher Body Corporation, which shares were in the trust. He withdrew these securities.

Appellant was married on January 5, 1929, and on January 10, 1929, in the suite of her father in a New York hotel she signed a letter which her father had caused to be prepared, addressed to him, Evelyn Mendelssohn, co-trustee, and Guardian Trust Company, successor trustee to the Security Trust Company. The letter stated that the appellant had been advised by her father, her mother and Leo M. Butzel, co-trustee, that the principal in the trust created for her was represented by 16,002 shares of General Motors stock, $668,826.53 par amount in bonds and $58,994.63 in cash, and that under the terms of the trust, no portion of the principal would come into her possession until she reached the age of fifty years unless her father, the settlor, chose voluntarily to terminate the trust in which event the principal would immediately become hers.

The letter also stated that her father had explained to her that he did not think it to her best interest to have so much money in her legal control for which reason he was unwilling to terminate the trust and that there were certain conditions in the trust unsatisfactory to him and which, as she understood them, were also objectionable to her. The letter stated that her father had proposed that he would terminate the trust provided she agreed freely and voluntarily, immediately upon the assets becoming vested in her, to execute a fresh and independent trust which, to a large extent, would embody the restrictions and limitations in the existing one. The letter stated the new trust had been prepared in advance of the termination of the old and explained to appellant by Leo M. Butzel, attorney and co-trustee, in the presence of her mother and that she (appellant) was sure she understood its full import and the consequences to her and her children, if any, and that she was writing the letter in order to induce her father to terminate the trust and momentarily vest title in the assets in her and that she had freely and voluntarily agreed to immediately execute a trust instrument attached to the letter marked "Exhibit A." The letter then stated that appellant regarded this as for her best interest and to carry out the wishes of her father from whom the wealth had been derived. The letter stated appellant had seen and had explained to her the original assets of the trust, the income accruing from time to time and the various credits and debits to the trust estate and income, all of which was satisfactory to and approved by her and that it was her explicit purpose to acquit her father and mother or any other person having had or now having any relation to the trust or the handling of its assets, from any further duty or obligation to account in any manner or to any extent, and finally the letter stated she (appellant) believed, in view of her inexperience in business and because of her youth, the assets should be held in trust. The letter was signed "Lydia Mendelssohn Buhl."

The trust instrument, "Exhibit A," attached to the letter and dated the same day, had a recital preceding the terms of the trust, which recital set out that it was understood by all of the natural parties to the trust that said trust, as originally constituted and subsequently modified, vested in the settlor, Louis Mendelssohn, the absolute right to recapture from time to time the whole or any part of the trust estate or to terminate same in his discretion, but that the legal effect of the original trust instrument as drafted in some respects seemed to be at variance with such intent and purpose; that the settlor at no time, or at the present, had any desire or purpose upon any doubtful construction to withhold or deprive Lydia Mendelssohn (appellant) of anything of substance, either principal or income, comprising the trust estate. It also set out that all of the natural persons were acquainted with and understood the accounts, credits and withdrawals of the trust assets and the income and agreed that the trust affairs had been correctly, accurately and completely handled and that the trust assets as of January 1, 1929, consisted of the securities, bonds and cash set out in Exhibit "A" attached to the trust instrument.

It then set out that Lydia Mendelssohn (appellant) had been advised by Leo M. Butzel, attorney, as to the legal construction of the trust, original and modified, and that she also had had explained to her and fully understood that her father, as settlor, was under no duty or obligation to terminate the existing trust under which she as beneficiary would not come into possession of the assets until her fiftieth year. It was then stated that the present terms of the trust original and as modified were unsatisfactory to the settlor and beneficiary and accordingly Louis Mendelssohn, the settlor, proposed that he terminate said trust with the resulting consequence that all the assets and accrued income on hand would become immediately vested in Lydia Mendelssohn as her sole property and estate, but that he was unwilling to do so unless she agreed as an inducement that she would immediately upon becoming so possessed of such property, create and set up a new trust containing terms and stipulations satisfactory to her, to Louis Mendelssohn, the settlor, and to Evelyn Mendelssohn, her mother, co-trustee. It was then stated she had agreed to do this and that in reliance upon such assurance, the settlor proposed to terminate the trust.

The terms, stipulations and limitations of the new trust were similar in substance, though not in detail, to the provisions of the original trust agreement. The minimum monthly income payable to appellant was increased from $300 to $500. Appellant was referred to in the trust instrument as "donor-beneficiary," her father as "controlling trustee" and her mother as "co-trustee."

The trust reported and paid the tax on the income accumulated by it during the years 1931 to 1935, inclusive. The appellant reported and paid the tax due on the income distributed to her out of the trust during these years. The Commissioner of Internal Revenue, on audit and review, determined that the appellant was the grantor of the trust for each of the years involved and he added all the income of the trust to appellant's income for each of the years and accordingly assessed deficiencies in income taxes against her, which she paid to the Collector, and filed claim for refund, which was rejected.

■ The decisive question is whether appellant was the grantor of the present trust. The word "grantor" is not defined in the statutes, and therefore is to be given its natural, ordinary and familiar meaning.

DeGanay v. Lederer, 250 U.S. 376, 381, 39 S.Ct. 524, 63 L.Ed. 1042. Putting the word in its ordinary setting, it means the person who establishes the trust or its donor, creator or founder. An express trust must be an explicit declaration of trust, accompanied by an intention to create such an estate and followed by an actual conveyance or transfer of definite property, or estate or interest made by a person capable of such a transfer and for a definite term, which vests the legal title in a person capable of holding as trustee for the benefit of a cestui que trust or purpose, to which the trust fund is to be applied or the retention of title by the owner under circumstances which clearly and unequivocally disclose intent to hold for use of another. Obviously a person who has no title or interest in property can create no trust therein. Brainard v. Commissioner, 7 Cir., 91 F.2d 880. In case the legal title is already held by one person for the benefit of another, the equitable owner usually may declare a further trust in his equitable interest. The Commissioner of Internal Revenue, in determining appellant's tax liability, assumed that the trust of March 24, 1921, which it is conceded at this point Louis Mendelssohn founded, ended and a new trust was created with appellant as both creator and principal beneficiary. If this premise fails, then the Commissioner's conclusion is clearly erroneous.

■ It is well settled, and we know of no contrary authority, that in matters of taxation, substance, rather than the form, of a transaction will be regarded. United States v. Phellis, 257 U.S. 156, 168, 42 S.Ct. 63, 66 L.Ed. 180. In applying this rule, if the court finds a transaction is not what it appears to be, actualities only will be considered.

■ The principle that one transaction may not be broken up into various elements to avoid a tax is not a single, but a double, edged sword, as it also may not be broken up into various elements to create a tax. Ashland Oil & Refining Company v. Commissioner, 6 Cir., 99 F.2d 588; Miller v. Commissioner of Internal Revenue, 6 Cir., 103 F.2d 58.

In natural sequence, the first question presented in determining the issue here is whether the original trust was revocable, for if it was, the person in whom reversion rested continued to be the settlor of the present trust. Although the trust

has some of the attributes of irrevocability, such a construction seems unreasonable, since, so long as it continued, the power to deal with the res was lodged with the father, the settlor, who expressly reserved to himself the power to terminate the trust upon written notice to the trustee. However, he did provide in Section 8 that if the trust was terminated pursuant to his written notice, the corpus and its accumulations should be conveyed to the appellant, or to the settlor in trust for her.

In view of the relationship of the parties and the natural dominating influence of the father over the child, the conclusion is inescapable that the settlor retained absolute dominion of the corpus of the present trust and that he construed the trust instrument to give him full power to withdraw the corpus at his discretion and for his own use. On April 20, 1923, with the consent of the trustee, he withdrew from the trust 1,650 shares of the common stock of the Fisher Body Company and made no substitution therefor. Where an ambiguity arises by reason of an apparent conflict between paragraphs of a trust instrument, the practical construction given to the instrument by the parties to it, and acquiesced in by all of them, as in the case here, is very persuasive in ascertaining intent. While not a dominant factor, the action of the Commissioner of Internal Revenue in treating the corpus of the trust as belonging to the settlor, and the inclusion in his income tax return of the income accruing therefrom, sheds light on the problem.

In view of the equivocal character of the language of the trust instrument, it is proper for the court to receive parol evidence as to the facts and circumstances surrounding the parties in the creation of the trust and to take into consideration their conduct in dealing with the res, not for the purpose of varying the terms of the instrument but to show the circumstances attending its execution and the position of the settlor at the time to ascertain the sense in which the language in the contract was used. This follows from an application of the well-known rule that where a written instrument is uncertain and indefinite in its contents, extrinsic evidence may be resorted to in aid of its terms and provisions, not to contradict, but to explain it. When resort is had to the circumstances attending the transaction, and the situation of the settlor at that time and his subsequent conduct, any doubt that he possessed complete dominion and control of the trust disappears.

It is true that in the form in which the present transaction was consummated, appellant was referred to as the grantor of the trust. This does not preclude the inference that her father was in fact the grantor. She at no time had possession or dominion of the res of the trust and was not a free agent in its disposition or use. Viewing the transaction in all of its aspects, and applying the principle that its substance will be regarded and its form cast aside, appellant's father was merely reshaping or remolding the trust as originally created, the better to conform with his ideas. Just what motive he had is immaterial, but it is not reasonable to conclude that in the transaction necessary to make the changes he desired, appellant threw off the cloak of beneficiary of the trust and put on that of its creator.

Subsequent to the audit and review of appellant's income tax returns, the Commissioner refunded to the trustees the taxes paid by them together with interest, except $32.64 for the year 1933. The aggregate sum refunded was $35,761.88, and in this action the appellee alternatively plead the above sum as an offset against appellant's recovery, if any.

Appellant urges on us that appellee's claim be denied because she was not obliged to pay the taxes erroneously refunded to the trustees and that an award of full recovery to her will not result in her unjust enrichment, and further that the refunds did not belong to her and that she is without power to compel the trustees to reimburse her. She also insists that, in making the refunds, the Commissioner of Internal Revenue acted voluntarily and because he did not carry out the law the court is not justified in denying her full recovery. Appellant's claim must be denied.

The present trust in substance provides that, during the life of Evelyn Mendelssohn, so much of its income as she directs shall be paid to appellant, and after her death, so much as the remaining trustees, from time to time, shall direct, shall be so paid. While the trust instrument provides that the payments to appellant shall be with due regard to her habits and thrift, there is nothing in the instrument which would prohibit the trustees from reimbursing her for the present credit against her refund. Even if there were

no provision in the trust instrument for such reimbursement, it does not follow that she would be without relief against the trust. The doctrine of "equitable lien" is akin to that of subrogation. Each is expressed in "equality is equity" and applies in cases where the law denies relief and where to follow it would work injustice. In the absence of an express contract, a lien based upon the fundamental maxim of equity may be implied and declared by a court of equity out of general considerations of right and justice as applied to the relationship of the parties and the circumstances of their dealing. Appellant, having discharged obligations of the trust estate and not being a volunteer, would have the right to look to the trust for recoupment under the above rule.

The claim of appellant for the refund of taxes and the obligation of the trust to pay them arise out of a common transaction. Bull v. United States, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421.

Actions brought to recover taxes erroneously paid, although actions at law, are equitable in their nature and suits for their recovery are predicated upon the same equitable principles that underlie actions in assumpsit for money had and received, and a party must recover if at all by virtue of a right measured by equitable standards. It follows that in the case at bar, appellee may show any state of facts which would deny appellant's right to recover. Public interest and equality of governmental burdens require that no one should be permitted to avoid his just share of taxes except by positive command of the law. Stone v. White, 301 U.S. 532, 537, 57 S.Ct. 851, 81 L.Ed. 1265. Appellant's right to recover in the case at bar arises from the fact that the trustees should have paid in part the taxes which she seeks to recover and in view of her relationship to the trust estate, no injustice is done her by crediting on her recovery the money which was unlawfully refunded to the trustees and this is especially true when she has the right of recoupment from them.

Louis Mendelssohn died in 1935 and his federal estate tax return was signed by Evelyn Mendelssohn, co-trustee of the present trust, Leo M. Butzel, who drafted the amended trust instrument and advised appellant of her rights, Jean S. Ramsey, who was associated with Louis Mendelssohn for thirty years and was familiar with his affairs, and Paxton Mendelssohn, his son, one of the designated successor trustees in the present trust. In response to a question on the return as to whether there was any trust in existence at the time of decedent's death created by him in his lifetime, no reference was made to the present trust although others were named. From these facts, appellee insists there arose an irrefutable inference that decedent was not the grantor of the trust. To this we cannot agree.

Admissions are competent, not as testimony, but because inconsistent with the position taken by the party who made them and bind only the party by whom made or to whom attributable. It is to be observed that appellant was not a party to the estate tax return. The statements therein were hearsay so far as she was concerned. Wiget v. Becker, 8 Cir., 84 F.2d 706; Helvering v. Miller, 2 Cir., 75 F.2d 474.

Appellee makes the alternative argument that apart from the effect of the alleged termination of the trust of March 24, 1921, and the alleged creation of the trust of January 10, 1929, appellant was the grantor of the earlier trust. The facts from which this contention stems are as follows: On December 30, 1919, Louis Mendelssohn caused to be transferred on the books of the Fisher Body Corporation, 4,000 shares of its stock into his name, that of his wife, and the Security Trust Company, as trustees for appellant. He retained the certificates in his possession until June 14, 1920, when he delivered them to the Security Trust Company, trustee, with substantially the following parol direction, that the accumulated income be invested in United States Certificates of Indebtedness due January 1, 1921, bearing interest of 5¾ per cent or 6 per cent. He further orally stated that he was presently going abroad and that in the event a trust agreement was not executed prior to his departure and in the further event of necessity, he wished his son, Gordon, appointed as his successor co-trustee for the benefit of appellant.

On January 2, 1921, Louis Mendelssohn, by letter, notified the Security Trust Company that the trust of which the 4,000 shares of Fisher Body Corporation stock was the corpus, was intended to be revocable by him and that he thereby revoked it and directed that the shares be returned to him. He further stated that he intended contemporaneously to create a trust of 2,000 shares of the stock for the benefit of appellant. On March 24, 1921, he cre-

ated this trust and the 2,000 shares of Fisher Body Corporation stock became a part of its res, and the other 2,000 shares were returned to him.

Prior to July 22, 1919, Louis Mendelssohn delivered to his son and brother of appellant, Gordon Mendelssohn, 6,250 shares of the capital stock of the Fisher Body Corporation with directions to sell them to Lawrence Fisher and to hold the proceeds in trust for appellant. On July 22, 1919, the stock was sold for $250,000 payable in installments and Gordon Mendelssohn made a declaration of trust of this contract under the terms of which the income arising therefrom was to be held in trust by him for appellant, or to be paid to her guardian so long as her mother lived and, in case appellant predeceased her mother, the corpus of the trust was to be paid in equal shares to her father, her mother and her other brother, Paxton C. Mendelssohn. If appellant survived her mother, then the principal was to be paid to her or her guardian and it was further provided in the declaration that the entire principal, together with its accumulations, was to be paid appellant when she reached the age of twenty-five years or sooner, with the consent of the trustees. On the same date Gordon Mendelssohn executed his declaration of trust, he executed another instrument substituting his father, Louis Mendelssohn, as trustee and assigned and transferred the res to him. Louis Mendelssohn merged the Gordon Mendelssohn trust into that of March 24, 1921.

Appellee argues from these facts that Louis Mendelssohn was without right to place the Lawrence Fisher sales contract or the 2,000 shares of Fisher Body Corporation stock in the trust of March 24, 1921, and therefore, it must be presumed appellant furnished the corpus of the trust and was its creator.

■ This contention must fail. The stock and the contract belonged to Louis Mendelssohn in his own right. He was not in fact trustee for appellant, otherwise than by the form of the statements he made concerning the stock and the contract. The whole transaction was his voluntary act, to which appellant was in no way a party or privy. There was no declaration made to her, or to be communicated to her, of an intention that the contract or the shares of stock should be hers. Even if the form of the declarations of trust is to be taken as conclusive proof of the existence of an intention on the part of appellant's father to make a gift to her, the execution of that intent was not so far complete as to operate to pass title to her. It is true that if the owner of the property declares that he holds the property in trust for another person, or transfers it in trust, a trust may arise although the beneficiary has no notice of it nor has accepted it, but failure to notify the beneficiary of the declaration of trust, or his nonacceptance is evidence that the owner does not intend immediately to create a trust and is also evidence that although a trust is created, the owner reserves the power to revoke it. Restatement of the Law of Trusts, chap. 2, p. 118, Section 36 (a) (b); Ambrosius v. Ambrosius, 2 Cir., 239 F. 473.

■ The declarations of trust of appellant's father and her brother are some evidence that they held these assets in some manner for her benefit, but their declarations, within themselves, transferred to her neither possession nor the right of possession to the property nor did these instruments constitute a legal title in her.

■ The primary purpose of the revenue statutes involved in this action was to prevent the evasion of taxes by means of trusts and estates. The concept of the statute was to reach income and apply the taxes on the grantor of trusts where, according to the terms of the instrument, the grantor could compel distribution or the use of the income of the trust for his benefit. As the grantor may use the income and corpus of the estate for the payment of the taxes imposed, no hardship falls on him.

In the case at bar under the terms of the trust instrument, appellant has no control over its income in excess of $6,000 per year and if the trustees, in the exercise of their discretion, withheld from her any additional income and if all the taxes due on the trust income were assessed against her, in all probability, they would exceed the annual payment to her.

■ Taxation being an intensely practical matter, the courts, in construing laws in respect thereto, should endeavor to avoid, so far as possible unjust and oppressive consequences. Farmers Loan & Trust Company v. State of Minnesota, 280 U.S. 204, 212, 50 S.Ct. 98, 74 L.Ed. 371, 65 A.L.R. 1000.

Being of the opinion that under the facts of this case, appellant was not the grantor of any of the trusts involved, it is error

324

to include in her taxable income any part of the income of the trust in excess of that distributed to her. The judgment of the lower court is set aside and this cause remanded for further proceedings consistent with this opinion.