## CENTRAL TRUST CO. v. UNITED STATES.

### No. 10540.

Circuit Court of Appeals, Sixth Circuit.

March 22, 1948.

---

William R. Seaman, of Cincinnati, Ohio, (H. J. Siebenthaler and William R. Seaman, both of Cincinnati, Ohio, on the brief; Frost & Jacobs, of Cincinnati, Ohio of counsel), for appellant.

Louise Foster of Washington, D. C., (Theron L. Caudle, Helen R. Carloss, Lee A. Jackson and Abbott M. Sellers, all of Washington, D. C., and Ray J. O'Donnell and William J. Dammarell, both of Cincinnati, Ohio, on the brief), for appellee.

Before HICKS, McALLISTER and MILLER, Circuit Judges.

HICKS, Circuit Judge.

Suit by appellant to recover of appellee the sum of $11,993.46 with interest. The District Court heard the case without a jury and dismissed it. The record consists of stipulated facts, certain exhibits and the testimony of three witnesses.

Bertha Baur died on September 18, 1940, and appellant was appointed Administrator of her estate. On October 1, 1941, appellant filed a Federal Estate Tax return for decedent but did not include in her taxable estate any part of the corpus of a trust executed by her on May 5, 1920 to First National Bank of Cincinnati, as Trustee. The Revenue Agent held that the trust corpus, minus the value of a remainder interest which was to go to the Cincinnati Conservatory of Music was includable, and made a deficiency assessment in the amount of $11,916.44. Appellant paid the assessment with interest and filed a claim for refund, which was rejected. This action followed.

Further stipulated facts are, that prior to April 26, 1920, the decedent owned and operated the Cincinnati Conservatory of Music. On that date, by letter, she offered to sell the entire property, then a going concern, to the Cincinnati Conservatory of Music Company, a newly organized corporation, for $200,000.00, either in cash or part in cash and part in common stock of the new company. Her offer was accepted and the sale consummated by the payment to her of $101,400.00 in cash and the delivery of 996 shares of fully paid common stock.

It is admitted in appellee's answer to the complaint that on or about May 5, 1920, Bertha Baur, as grantor, and the First National Bank of Cincinnati, as Trustee, executed a Trust Agreement whereby the $101,400.00, represented by certain securities having a par value of $112,500.00, was transferred to the Trustee. These securities constituted the corpus of the estate.

Paragraph 4 of the trust agreement provided that during the life of Bertha the

trustee should pay to her, as she might direct, the entire net income of the trust fund.

Paragraph 5 provided that on the death of Bertha the trustee should pay the net income to her sister, Wanda Baur Clifton, for and during her natural life, and that in the event her husband, Chalmers D. Clifton, survived her the net income should go to him for life. It was further provided (paragraph 6) that if Wanda did not survive Bertha, then at the death of Bertha the net income should be paid to Chalmers. The trust agreement further provided that after the death of Bertha, Wanda and Chalmers, the trustee should pay the principal of the trust estate and accumulated income to the Cincinnati Conservatory of Music Company.

Then followed paragraphs 7 and 8 of the trust agreement, to wit:

"7. If at the time of the death of the last survivor of the said Bertha Baur, Wanda Baur Clifton and Chalmers D. Clifton, The Cincinnati Conservatory of Music Company is no longer in existence, and it has no successors or assigns, who are carrying on the work of that institution, then the principal of the trust estate herein provided for and held by the Trustee at that time, together with all accumulations of income thereof not theretofore paid over, shall be transferred, conveyed and set over in fee simple to the heirs at law of Wanda Baur Clifton.

8. Should Bertha Baur survive Wanda Baur Clifton and Chalmers D. Clifton, and if during her life, The Cincinnati Conservatory of Music Company should for any reason be dissolved, and it has no successors or assigns, then and in that case, the said Bertha Baur reserves the right to add to and supplement the trusts herein set forth with reference to the distribution of the trust estate herein provided for at the time of her death."

The Commissioner of Internal Revenue rejected the claim for refund upon the ground that the value of the corpus of the trust should be included in the decedent's gross estate, as provided in Sec. 811(c) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev. Code, § 811(c), as a transfer made to take effect at or after the decedent's death. The pertinent provisions of Sec. 811(c) are printed in the margin.[1] It seems obvious that neither in paragraphs 6 nor 7 did Bertha retain for herself a right to designate the persons who should possess or enjoy the trust estate. The right to transfer, convey and set over to those entitled to it under paragraphs 6 and 7 was fully and unequivocally granted to the trustee without reservations.

The crux of the case lies in paragraph 8. By that paragraph if Bertha survived Wanda and Chalmers and if during her life the Conservatory of Music Company became dissolved without successors or assigns, then and in that case Bertha reserved the right to add to and supplement the trusts. We quote the exact language: *"The said Bertha Baur reserves the right to add to and supplement the trusts herein set forth with reference to the distribution of the trust estate herein provided for at the time of her death."* (Italics ours.)

The court considered paragraphs 6, 7 and 8 together and concluded that if Bertha became the sole survivor as between herself, Wanda and Chalmers, and if during her remaining life the Conservatory of Music Company became dissolved without successors or assigns, the trust instrument reserved to Bertha the right to dispose of, or as the court said, reserved a general power of appointment with reference to the trust estate at her death, and that therefore its value should be included in determining her gross estate. We cannot agree.

---

[1] Code, Section 811. "The value of the gross estate * * * shall be determined by including the value * * * of all property * * * except real property situated outside the United States. * * *

"(c) To the extent of any interest therein * * * of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death * * * (2) the right, either alone or in conjunction with any person to designate the persons who shall possess or enjoy the property or the income therefrom * * *."

Bertha disposed of her entire interest in the trust estate by the terms of the trust instrument, retaining no part of it. We think it clear that what she did reserve was the right to add to the trust estate and to supplement the trust provisions with reference to the final distribution. In the plain, ordinary meaning of the terms the right to add to and supplement the trusts is directly contrary to the right to take away or retain any part of it for herself, or to designate another beneficiary.

The quoted language is somewhat equivocal but under the generally accepted rules of construction we may look to the entire trust instrument and the circumstances under which it was executed. The rule is applicable in a tax refund case. In Buhl v. Kavanagh, 6 Cir., 118 F.2d 315, 321, we said: "In view of the equivocal character of the language of the trust instrument, it is proper for the court to receive parol evidence as to the facts and circumstances surrounding the parties in the creation of the trust and to take into consideration their conduct in dealing with the res, not for the purpose of varying the terms of the instrument but to show the circumstances attending its execution and the position of the settlor at the time to ascertain the sense in which the language in the contract was used. This follows from an application of the well-known rule that where a written instrument is uncertain and indefinite in its contents, extrinsic evidence may be resorted to in aid of its terms and provisions, not to contradict, but to explain it. * * *"

The circumstances were these: At the time Bertha executed the trust agreement she owned in her own right 996 shares of the common stock of the Cincinnati Conservatory of Music Company and possibly other property not included in the trust. If the Conservatory of Music Company failed and she survived her sister Wanda and her brother-in-law Chalmers, then under paragraph 8 the entire trust would become the property in fee simple of the heirs at law of Wanda, and these heirs would be her own heirs. Bertha not only owned the Conservatory before its incorporation but she was vitally interested in it. To keep it a going concern she had contributed to it all the salary she received from it and she wanted the trust to go to it if it remained a going concern. If it did not it was most natural that she wished to add her own estate, or at least a portion of it, to the trust estate which might in the end, as she was advised by counsel, go to those who were the natural recipients of her bounty.

Mr. Carl Jacobs, a Cincinnati lawyer, who had been for many years counsel for Bertha, and who wrote the trust instrument, testified as to these circumstances. An exception to his testimony was sustained but the court heard the testimony for the purposes of the record. Nevertheless, before its final decision, the court gave full consideration to the testimony of Mr. Jacobs as to the facts and circumstances, and we think properly so. However, it concluded that its decision must be controlled by the decision of the Supreme Court in Fidelity Co. v. Rothensies, 324 U.S. 108, 65 S.Ct. 508, 89 L.Ed. 783, 159 A.L.R. 227, and Commisioner v. Estate of Field, 324 U.S. 113, 65 S.Ct. 511, 89 L.Ed. 786, 159 A.L.R. 230.

We think that the Rothensies case and the Field case are both inapplicable. In the Rothensies case the trust had a contingent provision whereby the grantor could appoint takers of the trust property in her will. In the Field case the grantor included in the trust a provision whereby the property might eventually go to her. Also in Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368, the trust contained a contingency whereby the trust estate should revert to the grantor.

The judgment is reversed, and inasmuch as the case was tried without a jury, it is remanded with directions to enter judgment in favor of appellant in the amount sued for, with interest.