### PETERS v. ALSUP.

Civ. No. 935.

United States District Court
D. Hawaii, First Division.

Feb. 23, 1951.

·Emil C. Peters, Honolulu, T. H., in pro. per.

Ray J. O'Brien, U. S. Atty., District of Hawaii, Honolulu, T. H., Theron Lamar Caudle, Asst. Atty. Gen., Andrew D. Sharpe and Frederic G. Rita, Sp. Assts. to the Atty. Gen., for defendant.

METZGER, Chief Judge.

### 1. *Introduction*

This case presents three questions of law, two of them involving difficult if not abstruse problems relating to the taxability, as gifts, of the relinquishment of certain powers reserved by the settlors of a discretionary trust.

Specifically, the questions are as follows:

1. Is the Commissioner of Internal Revenue barred from reviewing the fair market value of corporate stock, a gift of which was made by the taxpayer in years more than three years prior to assessment, and assessing a deficiency in the current year based upon the alleged undervaluation of such stock?

2. Does the relinquishment by the taxpayer of his discretionary power or control over the distribution of the property comprising a trust settled in 1935 constitute a non-taxable transfer of property within the "amnesty" offered by the Revenue Act of 1943?

3. Does the relinquishment by the taxpayer of his discretionary power or control over the disposition of the property comprising such 1935 trust constitute, in respect of the alleged power of appointment of which the taxpayer was the donee and the wife of the taxpayer the donor, a non-taxable "release" of the power of appointment within the provisions of the Revenue Act of 1942?

### 2. *The Facts.*

On September 8, 1931, the plaintiff and his wife created three trusts, in identically the same form, mutatis mutandis, in each of which the Hawaiian Trust Company, Ltd., is trustee, and one of the three adult children of the settlors is the beneficiary.

On May 28, 1935, the same settlors created another trust, with the same trustee, with themselves as beneficiaries for their joint lives and the survivor of them, remainder to such persons and in such estates as the survivor might by his or her last will appoint; and, in default of such appointment, to the trustee of the trusts of 1931, for the beneficiaries of the latter trusts, in equal shares.

Shares of stock constituted the corpus of each trust. The stock conveyed in trust by the 1935 indenture was in the name of the plaintiff and his wife "as joint tenants with right of survivorship and not as tenants in common".

Each of the four trusts reserved to the settlors and the survivor of them the right "from time to time to change, modify or amend the provisions of this trust deed but not to revoke the same or to so change it that they or either of them will receive back any of the trust estate".

The wife of the taxpayer died on January 8, 1942.

On December 31, 1943, the plaintiff taxpayer, as the surviving settlor of the 1931 trusts, amended those indentures in several

particulars, one of them being the irrevocable release and extinguishment by him of the right of the surviving settlor "to shift or to effect a partial or complete alteration of the economic benefits" of the 1931 trusts, thus modifying the original provisions reserving to the settlors the right of amendment within certain limits, as stated above.

On January 1, 1944, and on October 25, 1944, the plaintiff, as the surviving settlor of the 1935 trust, amended that indenture by incorporating therein directions to the trustee to transfer to itself as trustee under the three indentures of 1931, certain personal property, including cash, included in the trust estate of 1935. Thus there was distributed to the Hawaiian Trust Company, Ltd., as trustee under the 1931 trusts, the remaining trust principal subject to the 1935 trust and all unapplied income therefrom, thereby conveying to the ultimate takers in default and anticipating what would have occurred under the provisions of the 1935 trust, supra, had the surviving settlor failed to exercise the power of appointment by will.

On October 26, 1944, the indenture of May 28, 1935, was canceled by the mutual consent of the plaintiff and the trustee.

In compliance with the provisions of Section 507 of the Revenue Act of 1932, as amended, the plaintiff and his wife made separate returns of the transfers by gift made by them in the calendar year of 1935 by the creation of the 1935 trust. The plaintiff asserts that "they assumed upon administrative practice Gift Tax Regulation 79, Art. 3, * * *, and E.T. .6, C.B. XIV-1, 1935, p. 381, * * *, that the gifts affected (sic) by the indenture of trust of May 28, 1935, were complete." The plaintiff returned the sum of $41,736.87 as the amount of gifts for the year "other than charitable, etc.", and his wife reported the sum of $27,370.35. Both claimed their respective amounts as specific exemptions, and therefore paid no tax thereon.

In computing his tax liability for 1943, the plaintiff employed the net gifts reported by him for 1935 as a part of the aggregate sum of net gifts made by him since June 6, 1932, the date on which the Revenue Act of 1932 was passed. In that aggregate sum was included gifts made by the taxpayer in 1933. On September 8, 1931, the date of the creation of the first trusts involved in this case, gifts were not subject to Federal tax. The plaintiff paid a tax according to the above method of computation.

The Commissioner, on the other hand, in assessing the plaintiff's tax liability for 1943, declined to accept the valuation of the stock of the Pineapple Holding Company, Ltd., placed by the plaintiff, and as reported by him in his 1935 return. The Commissioner determined that the fair market value of the stock at the time of the gift—May 28, 1935—was $17.125 a share, increased the amount of net gifts of previous years by the amount of the alleged undervaluation, and found a deficiency in the tax liability of the plaintiff for the year 1943. On October 10, 1947, the plaintiff paid the alleged deficiency, amounting to $52.71, with interest amounting to $10.89.

For the calendar year of 1944, the plaintiff, pursuant to the provisions of Section 1006 of the Internal Revenue Code, 26 U.S.C.A. § 1006, made a return of all transfers by gift made by him during that year. He reported the amendments of the trust indenture of May 28, 1935, effected January 1, 1944, and October 25, 1944, and the cancellation of the trust by the indenture of October 26, 1944, as a relinquishment by him of power or control with respect to the distribution of the property subject to that trust, as well as the income therefrom. He reported those amendments and that cancellation as the exercise and termination of such power and control, reserved to the settlors and the survivor of them by the provisions of the 1935 trust, as nontaxable for gift-tax purposes. The plaintiff also, on March 7, 1945, prepared in writing and filed with the Commissioner his consent to treat such relinquishment in the calendar year in which effected and for all periods thereafter as having been a transfer of property subject to tax under the provisions of the gift-tax law.

On September 17, 1947, the Commissioner determined a deficiency in the plain-

tiff's gift taxes for the calendar year of 1944, in the sum of $7,908.37. The theory of the Commissioner's action was that the plaintiff was the grantor of the trust property within the meaning of Section 1000 (e) of the Internal Revenue Code, 26 U.S.C.A. § 1000(e), infra, only to the extent of the one-half of the corpus of the trust attributable to the property transferred to it by the taxpayer, and that therefore the release was non-taxable only to the extent of one-half of the value of the trust property; and that the one-half attributable to the property transferred to the trust by his wife was consequently taxable under Section 1000(c) of the Internal Revenue Code, infra.

The deficiency, in the sum of $7,908.37, with interest of $1,259.59, was paid by the plaintiff on November 10, 1947.

The plaintiff seeks judgment for $63.60 on the first cause of action, based upon the payment of the 1943 deficiency, and for $9,167.96 on the second cause of action, based upon the payment of the 1944 deficiency.

**3.** *As to the First Cause of Action: The Commissioner Is Not Barred by the Statute of Limitations From Reviewing the Fair Market Value of Corporate Stock.*

▮ No evidence whatever was submitted as to the fair market value of the 5,355 shares of stock of the Pineapple Holding Company, Ltd., which forms the major part of the 1935 trust corpus. The plaintiff contends that under the provisions of Section 1016(a) of the Internal Revenue Code, 26 U.S.C.A. § 1016(a), which require that the assessment of a gift tax shall be made, or its collection begun, within three years after the return is filed, the Commissioner was barred in 1947 from reviewing the fair market value of the corporate stock in question. The plaintiff asserts that the fair market value of the stock in 1935 is purely a question of fact and that there is an important distinction between questions of law and questions of fact in determining the "true and correct aggregate" of net gifts of previous years, as recognized in Winterbotham, Commissioner, U.S.B.T.Apps. 972, 978.

The plaintiff contends that it could not have been the intention of the Supreme Court in Commissioner of Internal Revenue v. Disston, 325 U.S. 442, 65 S.Ct. 1328, 89 L.Ed. 1720, to construe the statute so that the question of the fair market value of a gift could hang undetermined over the head of a taxpayer during the remainder of his life should he desire to make an additional gift prior to his death.

There is merit to much of plaintiff's argument on this question, but the words of the Disston case compel a decision against plaintiff.

A part of the Commissioner of Internal Revenue v. Disston case, 325 U.S. at page 449, 65 S.Ct. at page 1331, is quoted, following: "The question remains whether the adjustment of net gifts for 1936 in computing 1937 and 1938 tax liability is barred by the statute of limitations. As has been noted, § 502 requires utilization of 'the aggregate sum of the net gifts * * * for each of the preceding calendar years' in the formula for computing gift tax liability. Section 517(a) does not purport to bar adjustment of the net gift figure for that purpose, but simply prevents assessment and collection of a tax for a year barred by the statute. The statute does not purport to preclude an examination into events of prior years for the purpose of correctly determining gift tax liability for years which are still open. The Tax Court and Treasury Regulations have construed § 517(a) as requiring determination of the true and correct aggregate of net gifts for previous years. The construction is in accord with the statutory language."

The relevant language of Section 502 of the Revenue Act of 1932, to which the Supreme Court refers in the foregoing excerpt, has been carried over verbatim into Section 1001(a) (1) of the Internal Revenue Code. Section 517(a) of the Revenue Act of 1932 is the same as Section 1016(a), supra, of the Internal Revenue Code.

**4.** *The Relinquishment by the Taxpayer of his Discretionary Control Over the Distribution of the Property Com-*

*prising the 1935 Trust Was Non-Taxable Only to the Extent of His Own Moiety Interest In Such Property.*

The second cause of action, however, presents greater difficulty. It involves the abstract and somewhat elusive problem of whether the relinquishment by the taxpayer of his discretionary power or control over the distribution of property comprising the 1935 trust, constitutes a non-taxable transfer of property or, in any event, a non-taxable "release" of a power of appointment.

According to the plaintiff's theory of the second cause of action, two "questions emerge and are posed for the decision of the court". The propositions to which the plaintiff refers constitute the last two points listed in the Introduction to this memorandum. They will be dealt with seriatim herein.

*(a) The Corpus of the 1935 Trust Was Not Held in Entirety.*

█ It will be remembered that in 1944, the plaintiff, as the surviving settlor of the 1935 trust, amended that indenture by incorporating therein directions to the trustee to transfer to itself as trustee under the three indentures of trust of 1931, all the property, including cash, comprising the 1935 trust estate. It will also be remembered that, December 31, 1943, the taxpayer had amended the 1931 trusts so as to release and extinguish irrevocably the right of the surviving settlor to shift or effect a partial or complete alteration of the economic benefits of the 1931 trusts. It follows, therefore, that in the transfer of the corpus of the 1935 trust to the trustee of the 1931 trusts, to be held by it under the terms of the latter trusts, the relinquishment of December 31, 1943, automatically applied also to the property that had formerly constituted the estate of the 1935 trust.

The plaintiff takes the position that the amendments of the trust indenture of 1935, effected by him in 1944, "constituted a relinquishment by him as one of the grantors in the indenture of May 28, 1935, of power or control with respect to the distribution of the property in the trust created prior to January 1, 1939, and the income therefrom, by an exercise and termination of such power or control within the exceptions of Sections 502(a) and 502(b) of the Revenue Act of 1943 (Internal Revenue Code, Section 1000(e) and Section 501(c) of the Revenue Act of 1932)". He further contends "that the deficiency assessed was erroneous upon the grounds: (a) That the settlors immediately prior to the creation of the 1935 trust were owners by the entirety of the property conveyed in trust; (b) that by the terms of the trust there was reserved to the survivor of the settlors as beneficiaries in equity, the same rights of survivorship in the trust res that he and she had theretofore enjoyed at law as tenants by the entirety, except for the inhibition against revesting; (c) that the exercise by the taxpayer of the power or control over the distribution of the remaining trust res was effected by him as a principal *and not as a principal of a moiety and an appointee of a moiety;* and (d) that at the time of such exercise by him of the power or control over the distribution of the remaining trust res he was a 'grantor' within the meaning of that term as employed in Sections 502(a) and 502(b) of the Revenue Act of 1943." (Emphasis supplied).

The defendant, on the other hand, maintains that:

"As the taxpayer was *the donor of only one-half* of the property in the trust, Section 1000(e) of the Internal Revenue Code * * * *applies only to the one-half that he gave* and not to the one-half that was given by his wife.

"Since the trust was not within any of the exceptions enumerated in Section 1000 (c) of the Internal Revenue Code * *, the one-half of the corpus attributable to the wife's contribution was properly taxed." (Emphasis supplied).

As to this phase of the case, therefore, both parties rely upon Section 1000(e). In addition, they both make passing reference to Section 1000(c), which, however, has greater relevancy to the topic dealt with in the next succeeding subdivision of this memorandum. The text of those two subsections follows:

"*Section 1000. Imposition of tax*

\*   \*   \*   \*   \*   \*

"(c) *Powers of appointment.* An exercise or release of a power of appointment shall be deemed a transfer of property by the individual possessing such power. For the purposes of this subsection the term 'power of appointment" means any power to appoint exercisable by an individual either alone or in conjunction with any person, except—

"(1) a power to appoint within a class which does not include any others than the spouse of such individual, spouse of the creator of the power, descendants of such individual or his spouse, descendants (other than such individual) of the creator of the power or his spouse, spouses of such descendants, donees described in section 1004(a)(2), and donees described in section 1004(b). As used in this paragraph, the term 'descendant' includes adopted and illegitimate descendants, and the term 'spouse' includes former spouse; and

"(2) a power to appoint within a restricted class if such individual did not receive any beneficial interest, vested or contingent, in the property from the creator of the power or thereafter acquire any such interest, and if the power is not exercisable to any extent for the benefit of such individual, his estate, his creditors, or the creditors of his estate. If a power to appoint is exercised by creating another power to appoint, such first power shall not be considered except under paragraph (1) or (2) from the definition of power of appointment to the extent of the value of the property subject to such second power to appoint. For the purposes of the preceding sentence the value of the property subject to such second power to appoint shall be its value unreduced by any precedent or subsequent interest not subject to such power to appoint.

\*   \*   \*   \*   \*   \*

"(e) *Certain discretionary trusts.* In the case of property in a trust created prior to January 1, 1939, if on and after January 1, 1939, no power to revest title to such property in the grantor could be exercised either by the grantor alone, or by the grantor in conjunction with any other person not having a substantial adverse interest in the disposition of such property or the income therefrom, then a relinquishment by the grantor on or after January 1, 1940, and on or before December 31, 1947 (or on a later date in any case where it is shown to the satisfaction of the Commissioner, in accordance with regulations prescribed by him with the approval of the Secretary, that failure to relinquish prior to such later date was for reasonable cause) of power or control with respect to the distribution of such property or the income *therefrom by an exercise or other termination of such power or control shall not be deemed a transfer of property for the purposes of this chapter.* If such property was transferred in trust, the grantor not retaining such power to revest title thereto in himself, or if such power to revest title to such property in the grantor was relinquished, while a law was in effect imposing a tax upon the transfer of property by gift, this subsection shall apply only if (1) gift tax was paid with respect to such transfer or relinquishment, and not credited or refunded, or a gift tax return was made within the time prescribed on account of such transfer or relinquishment but no gift tax was paid with respect to such transfer or relinquishment because of the deductions and exclusions claimed on such return, and (2) the grantor consents, in accordance with regulations prescribed by the Commissioner with the approval of the Secretary, for all purposes of this chapter to treat such transfer or relinquishment in the calendar year in which effected, and for all periods thereafter, as having been a transfer of property subject to tax under this chapter. This subsection shall not apply to any payment or other disposition of income occurring prior to the termination of power or control with respect to the future disposition of income from the trust property."

The plaintiff contends that at the time of his exercise of the reserved power or control with respect to the distribution of the trust property, he was a "grantor", within the meaning of Section 1000(e). He fur-

ther asserts that he and his wife were "tenants by the entirety" of the trust property, and that they reserved to themselves, as beneficiaries of equitable estates, the same power or control with respect to the distribution of the property as had been previously possessed by them at law as tenants by the entirety, except for the inhibition against revesting. As tenants by the entirety, he maintains, each of the settlors was possessed in his and her own right of the whole; "the entirety". Ergo, runs the argument, the plaintiff, in exercising the reserved power in question, acted by virtue of the power reserved to him as a *principal,* and not by virtue of any power delegated to him by his wife.

The defendant complains that the plaintiff has cited no case which holds that there can be, under the law of Hawaii, a tenancy by the entirety of *personal* property. At the outset, however, and for the purposes of this case, we may assume to be correct the plaintiff's assertion, in his reply brief, that "At common law by analogy to realty an estate by the entirety could be created in personalty". In addition to the many decisions cited by plaintiff, there is considerable additional authority to the same effect. See the copious collection of cases in 8 A.L.R. 1017–1022.

Our specific task, however, is to ascertain whether, under the law of Hawaii and under the facts of this case, the plaintiff was a "grantor" within the purview of Section 1000(e).

As the plaintiff points out, the word "grantor" is not defined in the statute, and therefore should be given its "natural, ordinary and familiar meaning, except as limited or restricted by the context." Rice v. Railroad Company, 1 Black 358, 66 U.S. 358, 378, 17 L.Ed. 147; DeGanay v. Lederer, 250 U.S. 376, 381, 39 S.Ct. 524, 63 L.Ed. 1042.

In Buhl v. Kavanagh, 6 Cir., 118 F.2d 315, 320, "The decisive question" was, as here, "whether appellant was the grantor of the present trust". The Court said:

"The word 'grantor' is not defined in the statutes, and therefore is to be given its natural, ordinary and familiar meaning. (Case cited.) Putting the word in its ordinary setting, it means the person who establishes the trust or its donor, creator or founder."

See also Rollins v. Helvering, 8 Cir., 92 F.2d 390, 392–393, certiorari denied, 302 U.S. 763, 58 S.Ct. 410, 82 L.Ed. 593; MacManus v. Commissioner of Internal Revenue, 6 Cir., 131 F.2d 670, 673.

Applying the foregoing principles to the facts at bar, we find that there were *two* grantors of the 1935 trust; namely, the plaintiff and his wife. The fact that she died before the relinquishments of 1944 took place does not militate against her being the grantor of one-half of the trust created in 1935. Subsequent events could not change her status as to *that* fact. Her status as joint grantor of the trust was frozen on May 28, 1935. Had she died on the following day, she still would have been the grantor of her moiety.

Nor is the legal situation altered by the fact that, in the plaintiff's own language, "by the terms of the trust there was reserved to the survivor of the settlors as beneficiaries in equity, the same rights of survivorship in the trust res that he and she had theretofore enjoyed at law as tenants by the entirety," etc. We are here concerned not with *ownership,* but with *grant.* Though, according to the stipulation of facts, the plaintiff, as "joint tenant" of the stock in question, "with right of survivorship", at his wife's death became the sole *owner* of the settlors' equitable estate in the 1935 trust, the stubborn fact remains that, from 1935 to the present day, he has been the *grantor* of only one-half of that trust.

The plaintiff seeks to avoid the effect of this logic by contending that "a conveyance to husband and wife in joint tenancy would create an estate by the entirety". To support this contention, the plaintiff invokes the principles of the common law, which he asserts have been adopted in Hawaii in this respect.

It therefore now becomes necessary to inquire whether, in the contemplation of Hawaiian law, the plaintiff's "tenancy" of the stock was by the entirety.

**I.** *In Hawaii, the Terms of the Grant Determine the Question of Joint Tenancy Vel Non.*

█ As we have seen, it has been stipulated in this case that the stock conveyed by the trust indenture of May 28, 1935, was, until transferred to the name of the trustee, in the name of the plaintiff and his wife "as joint tenants with right of survivorship and not as tenants in common". In Hawaii, such a stipulation is conclusive.

█ Section 3190 of the Revised Laws of Hawaii of 1925 was as follows: "*Conveyances to two or more.* All grants, conveyances and devises of land, or of any interest therein, made to two or more persons, shall be construed to create estates in common and not in joint-tenancy or by entirety, unless it shall manifestly appear from the tenor of the instrument that it was intended to create an estate in joint-tenancy or by entirety; *provided,* however, that the foregoing provisions shall not apply to grants, conveyances or devises to executors or trustees."

This provision was carried over into the 1935 compilation as Section 5180, and into the 1945 code as Section 12780.

It should be observed in passing, that the proviso in the section does not apply to the instant case, since we are not here concerned with the title of the *trustee* but of the *trustors.*

The Hawaii rule accords with general law. See 161 A.L.R. 464–465.

**II.** *The Common Law Doctrine of the Unity of Husband and Wife No Longer Prevails in Hawaii.*

In his reply brief, the plaintiff says: "The tenancy by the entirety is founded on the common-law doctrine of the unity of husband and wife as constituting in law but one person; and that is basis for the adoption of the principles of the tenancy in Hawaii."

█ In the opinion of this Court, the learned plaintiff has here fallen into grave error, so far as the law of Hawaii is concerned.

In First National Bank of Hawaii **v.** Gaines, 16 Haw. 731, 732–733, the court said: "The statutory capacity of a married woman to take, hold and receive property to her separate use *is inconsistent with the common law fiction of the unity of husband and wife* as well as with the former statute giving the husband by virtue of marriage his wife's personal property. The relations between husband and wife unless as affected by the statute of 1892 on the subject of the common law are statutory in the law of Hawaii. '*As the laws have destroyed this unity the incidents or consequences of the unity ought not to operate.*'" (Emphasis supplied).

Indeed, even with regard to other jurisdictions, where the archaic concept of the oneness of husband and wife does survive, the Supreme Court of the United States has frowned upon the application of the ancient doctrine to *tax* problems.

In Tyler v. United States, 281 U.S. 497, 503, 50 S.Ct. 356, 359, 74 L.Ed. 991, the Court said: "According to the amiable fiction of the common law, adhered to in Pennsylvania and Maryland, husband and wife are but one person, and the point made is that, by the death of one party to this unit, no interest in property held by them as tenants by the entirety passes to the other. This view, when applied to a *taxing* act, seems quite unsubstantial. *The power of taxation is a fundamental and imperious necessity of all government, not to be restricted by mere legal fictions.*" (Emphasis supplied.)

**III.** *Hawaiian Statutes Have Sedulously Recognized the Separateness Of a Tenancy by the Entirety from A Joint Tenancy.*

The language of Section 3190 of the Revised Laws of 1925, supra, and that of its successors, clearly shows that the various legislatures of Hawaii have carefully observed the distinction between tenancy of the entirety and joint tenancy. There is certainly no suggestion that, as the plaintiff contends in his reply brief, "a conveyance to husband and wife in joint tenancy would create an estate by the entirety".

The matter, however, is put beyond cavil by Act 11 of the Session Laws of

Hawaii of the Special Session of 1933. The closing sentences of this statute, which dealt with the inheritance tax, are significant: "As hereafter modified this paragraph *shall apply to tenancies by the entirety as well as to joint tenancies.* Provided, however, that where such property is held in the joint names of a husband and wife, *whether as joint tenants or as tenants by the entirety,* only an undivided one-half of the property shall be deemed transferred and taxable under the provisions of this chapter." (Emphasis supplied.)

The foregoing provisions were carried over almost verbatim into Section 2060 of the Revised Laws of 1935 and into Section 5553 of the Revised Laws of 1945.

The expression "whether as joint tenants or as tenants by the entirety", as used in the cited statute, would be meaningless if, as the plaintiff contends, a conveyance to husband and wife in one tenancy would create an estate in the other.

As we read the Hawaiian statutes, all three tenancies are recognized in this territory. If the grant is silent or ambiguous as to the type of tenancy, an estate in common shall be presumed. If a joint tenancy is specified, an estate in joint tenancy is created. If a tenancy by the entirety is spelled out, the terms of *such* a grant, too, will be respected. Nowhere in the Hawaiian statutes or in Hawaiian jurisprudence is there any suggestion that the terms "joint tenancy" and "tenancy by the entirety", where husband and wife are concerned, are interchangeable.

The cases cited by the plaintiff in support of his contention were either the expressions of courts sitting in other jurisdictions, or were handed down in Hawaii long before the decision in the Gaines case, supra, and long before the enactment of the statutes to which we have just referred. The authorities relied upon by the plaintiff do not reflect the present state of the Hawaiian law.

Accordingly, this Court holds that the plaintiff was the grantor of only one-half of the stock, within the meaning of that term as it is employed in Section 502

(a) and (b) of the Revenue Act of 1943, Section 1000(e) of the Internal Revenue Code.

*(b) The Plaintiff Is Estopped from Claiming That He Is the Grantor Of the Entire Trust.*

The plaintiff concedes that "The taxpayer and his wife pursuant to and in compliance with the provisions of Section 507 of the Revenue Act of 1932, as amended, made separate returns of the transfers by gift made by them in the calendar year 1935 by the creation of the 1935 trust". He also concedes that he and his wife each claimed the full amount of their respective gift totals as specific exemptions, with the result no tax liability was incurred. Had the taxpayer reported himself as being the sole grantor of the trust, he would have had to pay a gift tax, since the maximum "specific exemption" of $50,000, "less (the) total amount of specific exemption claimed for preceding years", would not have been absorbed the entire amount of his gifts for 1935.

The plaintiff does not deny these facts, but asserts that "There is nothing inconsistent in construing one's legal position under certain statutes or regulations one way, and construing it under other statutes another way". He adds that "there is no showing that the Bureau took any position to its prejudice by reason of the separate returns made and the separate claims of full exemption".

This Court cannot agree with the plaintiff's reasoning. If the plaintiff was the grantor of the entire trust in 1944, he was so in 1935. It can hardly be said that the Commissioner's position was not prejudiced by the fact that the plaintiff and his wife filed separate gift tax returns in 1935, as a result of which neither paid any gift tax whatsoever, whereas the plaintiff would have been liable for a tax had he held himself as the sole grantor of the trust.

In R. H. Stearns Co. of Boston, Mass. v. United States, 291 U.S. 54, 61–62, 54 S.Ct. 325, 328, 78 L.Ed. 647, Mr. Justice Cardozo said: "The applicable principle is fundamental and unquestioned. 'He

who prevents a thing from being done may not avail himself of the nonperformance which he has himself occasioned, for the law says to him in effect "this is your own act, and therefore you are not damnified" '. (Cases cited). Sometimes the resulting disability has been characterized as an estoppel, sometimes as a waiver. The label counts for little."

5. *The Plaintiff Effected a Non-Taxable Relinquishment of His Control Over His Deceased Wife's Moiety Interest in the Trust Property, By Virtue of Section 452(c) of the Revenue Act of 1942.*

We advert, finally to Point II urged in support of the plaintiff's second cause of action. This point is fully stated as "Question 3" in the Introduction to this memorandum opinion.

Point II is based upon the following subsection of Section 452 of the Revenue Act of 1942:

"(c) *Release on or Before January 1, 1943.*

"(1) A release of a power to appoint before January 1, 1943, shall not be deemed a transfer of property by the individual possessing such power.

"(2) This subsection shall apply to all calendar years prior to 1943."

The defendant concedes that the period has been enlarged by subsequent amendments to January 1, 1951.

The defendant contends, however, that the plaintiff "never" *released* his power to alter, modify or change the 1935 trust. On the contrary, it is argued, the plaintiff *exercised* that power by transferring the assets of that trust to the three 1931 trusts. As to the plaintiff's one-half interest in the property, the Commissioner concedes that such an "exercise" was "the equivalent of a relinquishment of the power", and therefore non-taxable. Section 1000 (e), supra, refers, it will be remembered, to the *grantor's* "exercise or other termination" of such power. That subsection applies only to a *grantor*. Only when an "exercise" of power is effected by a grantor can it be equivalent to a "relinquishment".

But, the defendant insists—and, as we have seen, correctly—the plaintiff is the *grantor* of only one-half of the trust. Therefore, it is argued, as to *his deceased wife's moiety,* the plaintiff's transfer of the 1935 trust corpus to the 1931 trusts did not amount to a "relinquishment", but was an "exercise" of the power and therefore, of course, taxable; for the amnesty of Section 452(c) applies only to *releases,* and not to *exercises.*

The difficulty with the defendant's argument, however, is that it overlooks the fact that Section 452(c) is not limited in its amnesty to *grantors* only, as is Section 1000(e). It applies to any "individual possessing such power (to appoint)." Now, there is no question that, as original owner of one moiety interest, and as surviving owner of the other moiety interest in the trust estate, it is clear that the plaintiff possessed the power. Otherwise, the defendant's entire argument that the plaintiff "exercised" instead of "relinquishing" the power would be meaningless. If the plaintiff "exercised" the power, such "exercise" is taxable as to his wife's moiety, since the amnesty of Section 452(c) supra, applies only to "release"; i. e., relinquishment, and since that section, unlike 1000 (e), does not make "exercise" equivalent to "relinquishment".

We therefore advance to the fundamental question under Point II; i. e., whether the transfer of the 1935 trust assets to the 1931 trusts was in fact a relinquishment of the plaintiff's power "to change, modify or amend" the provisions of the 1935 trust instrument.

Elsewhere in this memorandum opinion, this Court has already indicated that, when in 1944, the plaintiff transferred the corpus of the 1935 trust to the trustee of the 1931 trusts, to be held by it under the terms of the latter trusts, he *automatically* subjected the 1935 trust property to the restrictions theretofore placed upon the 1931 trusts by the document of December 31, 1943. Among those restrictions was the irrevocable release and extinguishment of "the right in the surviving settlor to shift or to effect a partial or complete alteration of the economic benefits", etc.

Little need be here added to this statement. The plaintiff, of course, *could* have

formally relinquished his right to amend the 1935 trust in *one* instrument, and then, immediately thereafter, in another instrument, he *could* have transferred the assets of the 1935 trust into the 1931 trusts. But the law—including the tax law—does not require a man to do a vain and useless thing. By transferring the 1935 trust into the 1931 immutable trusts, the plaintiff made the 1935 trust likewise immutable. In such matters, "we must regard matters of substance and not mere form". Weiss v. Stearn, 265 U.S. 242, 254, 44 S.Ct. 490, 492, 68 L.Ed. 1001; United States v. Phellis, 257 U.S. 156, 168, 42 S.Ct. 63, 66 L.Ed. 180; Ingle Coal Corporation v. Commissioner of Internal Revenue, 7 Cir., 174 F.2d 569, 571.

### 6. *Conclusion.*

The plaintiff is concededly exempt from a gift tax on the transfers, in 1944, of the 1935 trust-corpus into the 1931 trusts, so far as his moiety interest in the former is concerned. And since, as we have just seen, his relinquishment of the power to amend, in so far as his deceased wife's interest in the 1935 trust property is involved, comes under the "amnesty" of Section 452(c), supra, he is not taxable on the 1944 transfers at all. He must therefore prevail in his second cause of action.

Accordingly, judgment should be entered for the defendant and against the plaintiff on the first cause of action, and in favor of the plaintiff and against the defendant on the second cause of action.