**BLACKMAN v. UNITED STATES.**
**PALMER v. SAME.**
Nos. 45477, 45478.

Court of Claims.

Feb. 1, 1943.

Hiram M. Nowlan, of Janesville, Wis. (Otto A. Oestreich, of Janesville, Wis., on the brief), for plaintiff.

Elizabeth B. Dairs, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

JONES, Judge.

The issue involved in these tax proceedings is whether the value of the interest of plaintiffs' decedent in a trust at the date of his death should have been included in his gross estate for estate tax purposes under the provisions of section 302 (d) of the Revenue Act of 1926, 44 Stat. 9, 71, 26 U.S.C.A.Int.Rev.Acts, page 228. Two trusts are involved, one created in 1924 and another in 1928. The issue turns on whether the trust created in 1928 constituted a new trust or whether the 1928 trust is to be considered in substance as a continuation of the 1924 trust and the issue determined as if the latter trust had not been canceled in 1928.

The plaintiffs are the daughter and son, respectively, of the decedent. In 1924 the decedent owned or controlled a one-half interest in the Parker Pen Company, and the other one-half interest was owned or controlled by George S. Parker. At that time the decedent created a trust (which will be referred to as the 1924 trust) and transferred to it his stock in the Parker Pen Company. He and his son and his son-in-law were the trustees. During the lifetime of the decedent the income from the trust was to be paid one-half to the decedent and one-fourth to each of the children, and upon the death of the decedent the income was to be paid one-half to each of the children with qualifications not here material. The trust was to continue until the death of the last survivor among his children, son-in-law, daughter-in-law and then living grandchildren unless terminated prior thereto as provided in the instrument. One method of termination was by consent of the trustees and the adult beneficiaries entitled to share in the income and another was by the sale of the Parker Pen stock which comprised the entire corpus of the trust. In the event of such termination, the principal of the trust was to be distributed among the individuals who were receiving its income and in the same proportion.

Another provision of the 1924 instrument was that no part of the Parker Pen stock owned by the trust could be sold unless all of it was simultaneously disposed of.

In 1928 a banking concern offered to purchase 75,000 of the 100,000 shares of the Parker Pen stock held by the trust. The decedent, his daughter, and her husband were willing to accept the offer. The son did not look with favor on the sale, for the reason that he was afraid such a change of ownership of the Parker Pen stock might affect adversely the position he then held with the Parker Pen Company. He, however, finally consented to the sale on the condition that the proceeds of the sale and the remaining 25,000 shares of stock in the trust would continue to be held in trust under the same arrangement existing under the 1924 trust and in which the members of the Palmer family would retain the same respective interests. The decedent, his daughter, and his son-in-law agreed to that proposal. In order that the sale might be carried out and the respective family interests remain the same as under the 1924 trust, it was necessary to terminate that trust and create a new trust with the same provisions as to the respective family interests but with the restrictive provision as to the sale of the Parker Pen stock eliminated.

The 1924 trust was accordingly terminated by an instrument signed by the daughter and son-in-law on November 23, 1928, and by the son and the decedent on November 26, 1928, each party signing both individually and as trustee (when their interests so appeared). At the time of termination one-half of the income of the trust was being paid to the decedent and one-fourth to each of his children. Therefore, under the provision with respect to termination heretofore referred to, the three individuals were entitled to shares of the corpus in that same proportion. However, in lieu of receiving shares in that manner, the decedent waived his interest in the trust estate and joined the other parties in directing that the corpus of the trust be conveyed one-half to his daughter and one-half to his son.

Immediately upon the termination of the 1924 trust a new trust (referred to for convenience as the 1928 trust) was created with the same corpus, the same trustees, and with substantially the same provisions except the restrictive provision as to the sale of the stock and certain provisions in regard to the termination of the trust. Because of the direction in the termination agreement as to the distribution of the corpus of the 1924 trust and the parties to whom the corpus was conveyed, the son and daughter appeared in the new trust instrument as the creators of that trust instead of the decedent as in the case of the 1924 trust. However, the decedent, the son, and the daughter (as well as contingent beneficiaries) were entitled to receive shares of the income and, in the event of termination, to participate in the distribution of the corpus in the same manner in the case of both trusts, that is, the decedent was entitled to receive one-half of the income from the trust and upon termination one-half of the corpus, and the son and daughter were each entitled to their shares of one-fourth. The provision with respect to termination by and with consent of the trustees and adult beneficiaries remained unchanged.

Our first question is whether a new trust was created by the 1928 instrument. An affirmative answer to that question is inescapable. The 1924 trust provided for methods of termination prior to its expira-

tion and one of those methods was availed of, namely, by agreement of the trustees and the adult beneficiaries. Upon termination, the 1928 trust was created without the provision which made the termination necessary in order to carry out a desired business transaction. That was an important substantive provision which bore a vital relationship to the corpus of the trust. After the creation of the new trust and the consummation of the sale, the trust no longer had a corpus consisting solely of stock of the Parker Pen Company which had to be disposed of as a unit but had a corpus consisting of miscellaneous assets which could be dealt with in the discretion of the trustees. Both in form and substance the 1928 trust was accordingly something different from the 1924 trust and, therefore, the property rights of the decedent in the 1928 trust which terminated with his death must be adjudged on the basis of that instrument.

■ Section 302 (d) of the Revenue Act of 1926, supra, provides that the value of the gross estate of a decedent shall be determined by including the value at the time of his death of all property of which he has made a transfer "where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, * * *." The trust instrument created in 1928, after the passage of that act, was in full force and effect at the decedent's death in 1933 and thereunder the decedent had the right together with his son and daughter and his son-in-law to revoke the trust and upon such revocation he would have been entitled to receive one-half of the corpus. At his death, the decedent's rights in one-half of the corpus of the trust ended and that part of the corpus passed to members of his family as provided in the trust in-

strument. The Commissioner included the value of the decedent's one-half interest in the trust in his gross estate for estate tax purposes. Such action was clearly within the statute. Helvering v. City Bank Farmers Trust Co., 296 U.S. 85, 56 S.Ct. 70, 80 L.Ed. 62.

■ The argument of plaintiffs that even if the 1928 trust is considered as a new trust the action of the Commissioner would nevertheless be erroneous for the reason that the decedent was not the settlor of the trust is without merit. When the 1924 trust was terminated, the decedent had the right to receive one-half of its corpus and each of his children was entitled to receive one-fourth, but instead of each of the parties receiving those respective amounts the decedent waived the receipt of his share and joined in the direction that the property be conveyed one-half to his son and one-half to his daughter. In connection with that conveyance, however, it had already been agreed that a further conveyance would also be made of that corpus, namely, a conveyance to a new trust in which the decedent would be entitled to receive one-half of the income and, in the event of its termination prior to its expiration date and during his lifetime, the decedent would be entitled to receive one-half of the corpus. While the decedent did not therefore make a transfer of the property to the 1928 trust, he caused others to make a transfer in such a manner that he retained a valuable interest therein. It is well established that the person who furnishes the consideration for the creation of a trust is the settlor even though in form the trust is created by another. Lehman v. Commissioner of Internal Revenue, 2 Cir., 109 F.2d 99, certiorari denied 310 U.S. 637; Buhl v. Kavanagh, 6 Cir., 118 F.2d 315.

It accordingly follows that both petitions should be dismissed. It is so ordered.