**NATIONAL BANK OF COMMERCE OF PORTLAND, Executor of the Will of Isabelle C. Harmon, Plaintiff,**

v.

**Clinton A. CLAUSON, Defendant.**

**Civ. A. No. 500.**

United States District Court,
D. Maine, S. D.

Jan. 7, 1955.

Leonard A. Pierce, Jotham D. Pierce, Portland, Me., for plaintiff.

Andrew D. Sharpe and Frank J. Ready, Sp. Assts. to Atty. Gen., Alton A. Lessard, U. S. Atty., Edward J. Harrigan, Asst. U. S. Atty., Portland, Me., for defendant.

CLIFFORD, District Judge.

This is an action brought against the Collector of Internal Revenue by the National Bank of Commerce of Portland, Maine, in its capacity as executor of the will of Isabelle C. Harmon for $6,229.10, plus interest thereon, on the ground that the value of one-third of the corpus of a certain *inter vivos* trust established in 1926 was erroneously included as a part of the decedent's gross estate under Section 811(d) of the Internal Revenue Code, 26 U.S.C.A. § 811(d).

The facts were stipulated by the parties and are substantially as follows: The decedent, Isabelle C. Harmon, died testate on February 17, 1944. She was the second wife of Charles C. Harmon, who died testate on December 9, 1923. By his first wife, Mr. Harmon had three children, Charles Dana Harmon, Carrie Harmon Shaw, and Harriet Borden Harmon. The son predeceased his father without any children. Mrs. Shaw was born on December 3, 1879. She was and is the wife of Edward A. Shaw who was born in 1873. They had two children born in 1909 and 1913, respectively, who with their mother are now living. Miss Harmon was born in 1884. The decedent was born in 1857. She and Mr. Harmon had no children.

Mr. Harmon executed his will on December 9, 1908, and executed the first and second codicils thereto on August 14, 1914 and January 24, 1923. Under the third article of Mr. Harmon's will and the codicils thereto, Mr. Harmon left the residue of his estate to Edward A. Shaw, his son-in-law and business associate, Willard E. Plumer, another business associate, and the decedent, as trustees. The corpus of the trust, which constituted nearly his entire estate, included 750 shares of preferred stock and 410 shares of common stock of Loring, Short & Harmon, the leading book, stationery and office supply company in Portland. The stock so owned by Mr. Harmon represented the controlling interest of that company. Edward A. Shaw and Willard E. Plumer were two of the leading executives of Loring, Short & Harmon. Also included in the trust were other assets of the value of some $82,000.

One-third of the income of this testamentary trust was to be paid to the decedent during her life, the remaining two-thirds were to be paid to Mr. Harmon's two daughters. The trust was to continue during the life of the decedent and 20 years thereafter, unless earlier terminated by the unanimous action of the three trustees. Upon such termination, the corpus was to be distributed entirely to Mr. Harmon's "then surviving chil-

dren", without any part thereof going to the decedent.

When Mr. Harmon died on the 9th day of December, 1923, the decedent, Mr. Shaw, Mr. Plumer, Miss Harmon, Mrs. Shaw and the two daughters of Mr. and Mrs. Shaw—granddaughters of Mr. Harmon—were living. Under the then statutes of Maine relative to the rights of widows, the decedent had the right within six months after the probate of Mr. Harmon's will and codicils to waive the provisions therein contained for her benefit and in that event to receive one-third of his net estate. R.S. Maine 1944, c. 156, § 13.

The trustees and beneficiaries under Mr. Harmon's will knew that Mr. Harmon realized the enhanced value that comes from the unified control of property and had as his primary purpose in establishing the testamentary trust the preservation in a block of the stock of Loring, Short & Harmon. The decedent was advised that she could waive her husband's will and receive one-third of his net estate outright. Such a waiver would defeat Mr. Harmon's intention with respect to the Loring, Short & Harmon stock. Neither the decedent nor her two stepdaughters wished to do that. Among the assets of the testamentary trust were other securities the retention of which in the trust was not essential to effectuate Mr. Harmon's intention. Under Mr. Harmon's will, however, it was not legally possible to withdraw these assets without terminating the trust.

The matter was discussed between the decedent, her stepdaughters (Mrs. Shaw and Miss Harmon), Mr. Shaw and Mr. Plumer. As a result of this discussion, the decedent, Mr. Shaw and Mr. Plumer as trustees under Mr. Harmon's will, and the decedent individually, together with her stepdaughters, executed on June 9, 1924, prior to the expiration of the period within which the decedent might have waived the provisions of Mr. Harmon's will, an agreement which provided that

" * * * if said Isabella Clark Harmon shall at any time during the continuance of said [testamentary] trust request the termination of the same, the trustees shall promptly terminate said [testamentary] trust and distribute the assets thereof to the beneficiaries in the proportions to which they are entitled under the provisions of said will, provided, however, that the said beneficiaries, coincidentally with such distribution, shall create in writing a voluntary trust upon the terms hereinafter set forth and immediately transfer and deliver to the trustees named therein to be held upon such trust all stock of Loring, Short & Harmon received by said beneficiaries in such distribution."

The settlement agreement also specified the provisions which the *inter vivos* trust was to embody, many of which differed from those of the testamentary trust. Among the differences was a provision that if Mr. Harmon's two daughters predeceased the decedent without issue, the entire income from the trust was to be paid to the decedent during her lifetime. In the testamentary trust the daughters' two-thirds of the income was undisposed of in the event they both died without issue before the decedent. Another variance was in regard to the distribution of the assets of the trust before or upon its termination, which under both trusts required the unanimous agreement of the trustees. Under the testamentary trust no part of the assets were to be distributed to the decedent; by the *inter vivos* trust distribution was to be made to the "then beneficiaries in the same proportions as their then interest in the income of said trust." Both of these provisions, therefore, were to the benefit of the decedent.

At the decedent's request and pursuant to the agreement of June 9, 1924, Mr. Shaw, Mr. Plumer and the decedent, as trustees under Mr. Harmon's will, in accordance with the power granted under the will to terminate the testamentary trust thereby established, executed on January 14, 1926, an instrument terminating such testamentary trust. Con-

currently with such termination, the decedent, Mrs. Shaw, and Miss Harmon, executed an agreement, providing for the distribution of practically all of the personal property of Mr. Harmon except the stock of Loring, Short & Harmon, by which each of the three received assets of an estimated value of $27,457.50. Certain assets and cash were held in the hands of the executors to pay administration expenses, etc., and the agreement specifically provided that the "Preferred and Common stock of Loring, Short & Harmon to be held in trust." Also on January 14, 1926, concurrently with the termination of the testamentary trust and in accordance with the agreement of June 9, 1924, a voluntary trust was established with the same trustees as in the testamentary trust, one of whom was the decedent. The provisions of the *inter vivos* trust were as specified in the settlement agreement.

All common and preferred stock of Loring, Short & Harmon held by the *inter vivos* trust was sold in 1931 and since that date none of that stock has been owned by said trust.

By the decedent's will and codicil thereto she left the residue of her estate in trust, the income payable equally to her niece (Isabelle Percy West) and to her nephew (Landgon W. Clark) during their lives, and, on their decease, the entire income to be paid to her grandnephew (William W. Clark) during his life, or such entire net income to be paid to whichever of these three was the last survivor during the balance of his or her lifetime, with the provisions that each of the beneficiaries should receive at least $1,200 annually, the deficit to be paid from principal if the trust income proved insufficient. Upon the termination of the life estates, the corpus was to go to the Home for Aged Women of Portland, Maine, a recognized charitable organization.

At the date of the death of decedent (February 17, 1944) the ages of Isabelle Percy West, Landgon W. Clark and William W. Clark were 61 years, 50 years and 16 years, respectively.

On April 19, 1945, plaintiff filed with the defendant Collector of Internal Revenue a Federal Estate Tax Return showing a gross estate of $65,813, claiming deductions, exclusive of the specific exemption, in the sum of $8,163.38, and showing no net estate for tax purposes under either the Revenue Act of 1926 or the Revenue Act of 1932 as amended.

Upon audit and review of that return, the Commissioner of Internal Revenue determined a deficiency of estate tax due of $6,229.10. The plaintiff waived restrictions upon immediate assessment of that deficiency and assessment was made against decedent's estate in January 1947 of estate tax of $6,229.10 and interest of $254.87 totalling $6,483.97. Thereafter additional interest was assessed in the further sum of $373.15. Said assessments were paid in full to defendant as to $6,483.97 on January 22, 1947, and as to $373.15 on March 3, 1947.

On May 14, 1947, the plaintiff filed a claim for refund of $6,229.10, plus interest thereon, stating therein three grounds for recovery as follows:

"1. The Commissioner of Internal Revenue erroneously included in gross estate the amount of $54,848.17, being one-third of the value on February 17, 1944 of a certain voluntary trust of which Edward A. Shaw et al. are the trustees. The taxpayer contends that no part of this trust is includible in decedent's gross estate, for the reason that the corpus of the voluntary trust was never owned by the decedent and therefore no transfer of it was or could have been made by the decedent.

"2. In computing the present value of a charitable remainder interest the Commissioner of Internal Revenue deducted from the residue of estate, out of which life annuities were to be paid, the full amount of the Federal estate tax found to be due; viz., $6,229.10. The Commissioner failed to take into consideration the fact that $3,200.76 of the tax was contributed by Edward A.

Shaw et al., trustees of the aforementioned voluntary trust.

"3. The Commissioner of Internal Revenue failed to allow as a deduction fees to be paid to its counsel and tax accountant for services rendered in connection with this tax proceeding."

The defendant has conceded that the contribution of $3,200.76 by the trustees of the *inter vivos* trust in payment of their aliquot share of decedent's estate tax liability, which was made by the trustees on January 23, 1947, should be taken into consideration in the computation of the charitable residue of decedent's estate. This concession entitles plaintiff to an additional deduction of $711.73 for the charitable residue.

The defendant also conceded that the plaintiff is entitled to the allowance of the claimed additional deduction for administration expenses of $1,500 for legal and accounting services rendered to decedent's estate.

With these concessions in mind, the parties stipulated without prejudice to their respective rights as follows:

"(a) If the Court should determine that the Commissioner erroneously included $53,018.51 in the gross estate of the decedent, which sum represents the value at the date of decedent's death of a one-third interest in the corpus of the trust created January 14, 1926 and referred to under the first ground for recovery in Plaintiff's Claim for Refund, then the Plaintiff would be entitled to recover from the Defendant the deficiency assessment of estate tax of $6,229.10, plus interest paid thereon of $628.02, totalling $6,857.-12, plus interest accruing thereon after payment thereof according to law, such interest to be computed as to $373.15 from March 3, 1947, and as to $6,483.97 from January 22, 1947.

"(b) If the Court should determine that the Commissioner properly included in the gross estate of the decedent the item of $53,018.-51 above-mentioned, then Plaintiff would be entitled to recover from the Defendant the sum of $468.89 plus interest according to law after payment thereof computed as to the sum of $373.15 from March 3, 1947 and as to $95.74 from January 22, 1947."

The pertinent provision of Section 811 of the Internal Revenue Code reads as follows:

§ 811 Gross estate:

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

"(a) *Decedent's Interest.* To the extent of the interest therein of the decedent at the time of his death;

\* \* \* \* \* \*

"(d) *Revocable transfers*

\* \* \* \* \* \*

"(2) *Transfers on or prior to June 22, 1936.* To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, \* \* \*." 26 U.S.C. § 811.

There is no dispute concerning the second condition of the statute—namely, that the decedent had at the time of her death a power in conjunction with other persons to change the beneficial enjoyment of the property involved. The sole issue, therefore, is whether or not the decedent was a grantor of one-third of the corpus of the *inter vivos* trust created on January 14, 1926, within the meaning of Sec. 811(d) of the Code.

The principal contention of the plaintiff is that none of the Loring, Short &

Harmon stock vested in her upon the termination of the testamentary trust so that she could later be the grantor of it. The plaintiff advanced two arguments: First, the decedent was not a grantor of the *inter vivos* trust as a matter of form. Although she had signed the instrument as a grantor, the plaintiff asserts that her signature was a superfluity because the assets of the testamentary trust, upon its termination, vested wholly in the two daughters and that they were the true grantors of the *inter vivos* trust; second, the stock was distributed to her and her two stepdaughters as mere conduits of title for the single purpose of placing it in the *inter vivos* trust. Since she received the stock coupled with and subject to the *inter vivos* trust, she was not, as a matter of substance, the grantor of it to that trust.

The Government, on the other hand, contends that the decedent received a one-third interest in all assets comprising the testamentary trust and that she made a transfer of her one-third interest in the Loring, Short & Harmon stock to the *inter vivos* trust. If there is doubt about the decedent having been settlor of the *inter vivos* trust because of said transfer, the Government contends that the decedent was the settlor of a one-third interest in the *inter vivos* trust because she furnished the consideration for its creation.

The principal factor in determining whether the decedent was the grantor of one-third of the Loring, Short & Harmon stock is the right she had under the laws of Maine to waive the provisions of her husband's will and receive in lieu thereof one-third of his entire estate outright. It is conceded that she considered exercising that right but abstained in order to abide by the intention of her husband with regard to maintaining that stock as an unit. Nevertheless, it was because of her statutory right that she was able to effect the settlement agreement and it is fair to assume that the decedent would not relinquish valuable property rights unless she was assured of receiving property of substantially equal value in return. It is in this context that the documents involved herein must be construed.

■ Considering that the decedent received one-third of the "free assets" distributed upon the termination of the testamentary trust, to which under the terms of that instrument she was not entitled, and participated in the execution of the instruments hereinbefore mentioned, first as a transferee and then as a settlor, together with all of the other facts in this case, this Court is of the opinion that all of the assets of the testamentary trust were distributed to the decedent and her two stepchildren equally, in proportion to their income interest under the will. Although it is true that the decedent's interest in the stock was received by her coupled with and subject to a trust, it was a trust which differed from the testamentary trust in respects beneficial to the decedent and the differences in the trusts were effected by her presumably before she elected to receive the stock in that manner. Under these circumstances, therefore, the decedent was not a "mere conduit of title", and by transferring the stock received by her pursuant to the settlement agreement to the *inter vivos* trust, she was, in the opinion of this Court, a grantor within the meaning of Sec. 811(d) of the Code.

■ Furthermore, the relinquishment of her statutory right to waive the provisions of her husband's will was the consideration she furnished for the creation of the *inter vivos* trust. It is well established that the person who furnishes the consideration for the creation of a trust is the settlor even though in form the trust is created by another. Lehman v. Commissioner, 2 Cir., 109 F. 2d 99, certiorari denied 310 U.S. 637, 60 S.Ct. 1080, 84 L.Ed. 1406; Buhl v. Kavanagh, 6 Cir., 118 F.2d 315; Blackman v. United States, 48 F.Supp. 362, 98 Ct.Cl. 413.

After a careful consideration of the cases relied upon by the plaintiff—namely, Reed's Estate v. Commissioner, 8 Cir., 171 F.2d 685; Estate of Milner v. Com-

**392**

missioner, 6 T.C. 874; and, Lyeth v. Hoey, 305 U.S. 188, 59 S.Ct. 155, 83 L. Ed. 119, this Court is of the opinion that they do not support the conclusions for which they were cited. Consequently, the Collector properly included in the gross estate of the decedent the item of $53,018.51, which sum the parties stipulated represents the value at the date of the decedent's death of a one-third interest in the corpus of the *inter vivos* trust created January 14, 1926.

Pursuant to a stipulation of the parties, therefore, it is ordered, adjudged and decreed that the plaintiff be entitled to recover from the defendant the sum of $468.89, plus interest on the sum of $373.15 from March 3, 1947, and interest on the sum of $95.74 from January 22, 1947.