ESTATE OF MAYNARD C. WEDUM, DECEASED, NORTHWESTERN NATIONAL BANK OF MINNEAPOLIS, EXECUTOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Wedum v. Commissioner
Docket No. 4970-83.
United States Tax Court
T.C. Memo 1986-247; 1986 Tax Ct. Memo LEXIS 359; 51 T.C.M. (CCH) 1225; T.C.M. (RIA) 86247; June 18, 1986. David R. Brennan and Robert W. Oelke, for the petitioner. Sue Ann Nelson, for the respondent. WILBUR
MEMORANDUM OPINION WILBUR, Judge: This case is before the Court on petitioner's *361 motion for partial summary judgment filed pursuant to Rule 121, Tax Court Rules of Practice and Procedure.[1]
Respondent determined a deficiency in petitioner's estate tax in the amount of $331,118.99. Maynard C. Wedum (decedent) died on October 15, 1978. Northwestern National Bank of Minneapolis (petitioner) was named executor of his estate. On January 15, 1980, a Federal estate tax return was filed with respondent. Petitioner paid the reported estate tax in the amount of $279,244.72, plus interest. The last will and testament of decedent provided for the following bequests: To his surviving spouse, Mabel Wedum, all automobiles, furniture or articles of personal property, a life estate in decedent's homestead, and payments of income from a testamentary trust equal to 25 percent of decedent's residuary estate. Decedent also made a specific bequest of $400,000 to his daughter, Carola Palm. The residue of decedent's estate passed to the Wedum Foundation, a qualified charitable organization. During the course of respondent's examination of the decedent's estate *362 tax return, respondent discovered that the decedent's son, John A. Wedum, had been tried on a charge of Federal income tax evasion in the United States District Court for the District of Minnesota in March 1977. At that trial (in which decedent testified as a Government witness), frequent references were made to six inter vivos trusts established by decedent. Further examination by respondent disclosed the existence, on the date of decedent's death, of a John A. Wedum Trust (son of decedent), a Carola Palm Trust (daughter of decedent), and four separate trusts for decedent's grandchildren (hereafter the "Palm Trusts"). Prior to the filing of the estate tax return, John A. Wedum, Carola Palm and each of the Palm grandchildren (Laura, Steven, John, and Robert) filed a claim against the decedent's estate for an accounting of their trust assets. The Wedum Foundation also filed a claim against the estate, as the principal residual beneficiary, for an accounting and a disbursement to it of the funds to which it was entitled. A settlement agreement, dated July 23, 1981, provided for a distribution of assets as follows: John A. Wedum--$300,000, Carola Palm--$103,000, John Palm--$55,500, *363 Laura Palm--$55,500, Steven Palm--$55,500, and Robert Palm--$55,500. The settlement agreement was signed by each of the trust beneficiaries, petitioner, and the Attorney General for the State of Minnesota. In the estate tax return filed on January 15, 1980, petitioner reported a gross estate of $4,569,052.63 and a charitable contribution in the amount of $3,119,299.05. The $625,000 in trust assets that were ultimately paid to John A. Wedum, Carola Palm, and the four grandchildren pursuant to the July 23, 1981 settlement agreement were included in the gross estate and in the charitable contribution deduction. On July 19, 1982, an amended estate tax return was filed by petitioner. On Schedule K of the amended return, the estate deducted the value of the trust assets awarded pursuant to the settlement agreement from the gross estate as "Debts of Decedent." On March 12, 1984, petitioner filed its motion for partial summary judgment, contending that the undisputed facts establish as a matter of law that the estate is entitled to a judgment based upon the exclusion from the gross estate of the $625,000 in trust assets. To the contrary, respondent contends that these assets were *364 properly included in decedent's gross estate as reported on petitioner's original estate tax return. Respondent further asserts that the estate's obligation under the settlement agreement does not qualify for a deduction pursuant to section 2053. [2]
Summary judgment pursuant to Rule 121 corresponds to Rule 56 of the Federal Rules of Civil Procedure and constitutes a procedural device designed to expedite the litigation process. Shiosaki v. Commissioner,61 T.C. 861 (1974). See the Note to Rule 121, 60 T.C. 1127-1128 (1973). This device, however, is not intended to serve as a substitute for a trial on the merits. The effect of granting such a motion is to decide the controversy against the non-moving party without a trial. Therefore, "such motion should be 'cautiously invoked' and only granted after a careful consideration of the case." Shiosaki v. Commissioner,supra at 863. *365 Rule 121(b) provides that a decision may be rendered on a motion for summary judgment if it is shown "that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." The factual materials and the inferences drawn from such materials must be considered in a light most favorable to the party opposing the motion. Heyman v. Commerce and Industry Insurance Co.,524 F.2d 1317 (2d Cir. 1975); Gauntt v. Commissioner,82 T.C. 96 (1984). Petitioner, as the moving party, has the burden of demonstrating that no genuine issue exists as to any material fact, and that it is entitled to a judgment as a matter of law. Addickes v. S.H. kress and Co.,398 U.S. 144, 157 (1970); Gulfstream Land and Development Corp. v. Commissioner,71 T.C. 587, 596 (1979). This Court has held that it will deny a motion for summary judgment if there is any reasonable doubt as to the facts at issue. Hoeme v. Commissioner,63 T.C. 18, 20 (1974). *366 Applying these standards to the facts in this record and in a manner most favorable to respondent, we conclude that a genuine issue of material fact remains with respect to the inclusion of the trust assets in the decedent's gross estate. Section 2031 defines the gross estate to include the value of all property, whether real or personal, tangible or intangible, to the extent provided for in sections 2033 through 2045. Section 2033 constitutes the basic inclusion provision and is somewhat analogous to the broad scope of section 61 which defines gross income. Section 2033 provides that the gross estate "shall include the value of all property to the extent of the interest therein of the decedent at the time of his death." If the decedent possesses only a life estate or life interest which terminates upon his death, however, section 2033 will not cause the value of this interest to be included in the gross estate. *367 Sections 2034 through 2045 are, therefore, designed to include in the gross estate property transferred during life where the decedent-transferor maintains some affinity with the property less than that which would cause the property to be includable in the gross estate pursuant to section 2033. Such transfers would otherwise escape the rather loosely woven net of section 2033. It is respondent's contention that genuine issues of material fact remain relative to the decedent's alleged possession of and control over the trust assets, and that petitioner's motion for partial summary judgment should be denied. We agree with respondent. The decedent established six trusts during his lifetime. Four of these trusts were created for the benefit of decedent's grandchildren (the Palm Trusts). The remaining two trusts were established for the benefit of his son (the John A. Wedum Trust) and his daughter (the Carola Palm Trust). The Palm Trusts
On October 1, 1962, the decedent and his wife, Mabel, executed identical trust instruments for the benefit of their four grandchildren: Robert Palm, Steven Palm, Laura Palm, and John Palm. The decedent was the trustee of each of these *368 four trusts, and each grandchild was the sole beneficiary of his or her own trust. The decedent and his spouse transferred assets to these four trusts having the following values: Laura Palm trust--$21,000, Steven Palm trust--$18,000, John Palm trust--$24,000, and Robert Palm trust--$12,000. Each of the four Palm Trusts included terms that provided for automatic termination of the trust upon the grandchild's 21st birthday. Upon termination of the trust, the beneficiary was to receive the remaining corpus and any accrued or accumulated income. If a beneficiary died prior to age 21, the trust corpus and any accumulated income was to be paid by the trustee to the estate of the decedent-beneficiary. Each of the Palm Trust instruments evidences a reserved power in decedent, as trustee, to control the investment of the trust assets. [3] The trust documents also indicate that decedent retained the discretion as trustee to withhold payments of income. [4] Petitioner asserts that, even assuming that the decedent retained a discretionary power to accumulate income, this power was effectively relinquished when decedent resigned as trustee in December of 1966. According to respondent, however, *369 the decedent's purported resignation as trustee of the Palm Trusts was a sham.He alleges that no trust assets were transferred to the successor-trustee, John A. Wedum, and that such assets remained in decedent's exclusive possession. The decedent testified at his son's criminal tax trial that he maintained, even after his resignation, exclusive and unfettered control over the Palm Trust assets. Maynard Wedum also indicated that he intended for the Palm Trust assets to remain under his jurisdiction until his death. We not also that neither the Laura Palm Trust nor the Steven Palm Trust terminated in accordance with its governing instrument when each beneficiary reached the age of 21. Furthermore, the Palm Trust ledger sheets indicate that the trust income was not distributed currently and instead was accumulated until the decedent's death. *370 The Carola Palm and John Wedum Trusts
During the years commencing in 1946 and ending January 1, 1960, decedent established accounts in the name of John A. Wedum and Carola Wedum. These "accounts" were funded with the decedent's cash gifts, usually in an amount conforming to the Federal and State gift tax exclusion. On January 1, 1960, grantor trusts were created for John A. Wedum and for Carola Palm (formerly Carola Wedum). John Wedum and Carola Palm were each designated as settlors of their own respective trusts. The decedent and attorney Robert Leach were named co-trustees. The John A. Wedum Trust was funded with a promissory note from "Local Gas of Alexandria, Inc." in the principal amount of $60,000. The sole beneficiary of the John A. Wedum Trust was John A. Wedum or, in the event of his death, his children. The Carola Palm Trust was funded with a promissory note from "Albert G. Frahm and John A. Wedum, a partnership doing business as the F & W Company." The promissory note was issued in the principal amount of $56,227.50. The sole beneficiary of the Carola Palm Trust was Carola Palm or, in the event of her death, her children. It is respondent's contention, *371 based on the decedent's sworn testimony at John A. Wedum's criminal tax trial, that all of the sums used to fund these two trusts came from the decedent's own personal assets. Generally, one who contributes property to a trust created by another is the true grantor to the extent of the contributions made. Buhl v. Kavanagh,118 F.2d 315 (6th Cir. 1941); Lehman v. Commissioner,109 F.2d 99 (2d Cir. 1940); Bogert, Trusts, sec. 41 at 428 (rev. 2d ed. 1984). "It is well established that the person who furnishes the consideration for the creation of a trust is the settlor even though in form the trust is created by another." Blackman v. United States,48 F. Supp. 362, 368 (Ct. Cl. 1943). To the extent that it is ultimately determined that the decedent's assets were used to fund these two trusts, Maynard C. Wedum will be treated as the settlor. A determination of the identity of the true settlor of these two trusts is critical because the application of *372 section 2036 is predicated on the decedent having made an inter vivos transfer of property or an interest in property. The John A. Wedum and the Carola Palm Trust documents are essentially identical. They provide in pertinent part as follows: "Trustees shall distribute to the settlor so much of the net income of and from the Trust Estate as Trustee Robert F. Leach, in his sole discretion shall determine, accumulating any income not so distributed." The Carola Palm and the John Wedum Trusts each provided that upon the death of Maynard C. Wedum, John A. Wedum was to be nominated as successor trustee. Both trust instruments also provide that upon the death of trustee Robert Leach, the Northwestern Bank of Minneapolis was to be nominated as successor trustee.We note that although Mr. Leach in fact died nearly eight years prior to the decedent, the bank was never notified of its appointment as successor trustee. On September 28, 1964, the decedent purportedly resigned as trustee of the John A. Wedum Trust and John A. Wedum was nominated as his successor. In the Federal District Court, however, the decedent indicated that he continued to act as trustee notwithstanding his pro forma resignation. *373 [5] He testified: Q. And after you resigned who then took over as trustee? A. Well, effectively even when Bob Leach was trustee, and even after I resigned, I--that was, what shall I call it, just an official designation. I handled it. [Transcript of Maynard C. Wedum's testimony given in March, 1977 in the United States District Court, District of Minnesota, p. 97 (hereafter "trial transcript").] Decedent further indicated in his testimony that his intent was for the trust assets to be accumulated and given to the beneficiaries after his death. [6] In addition, the decedent testified that he commingled the John A. Wedum and Carola Palm Trust assets with his own personal and business assets. (Trial transcript, supra at 123.) The decedent stated that he continuously held the assets used to fund these two trusts in his personal accounts over which he had sole signatory authority. *374 We note that petitioner raised an objection to the admission of that portion of respondent's affidavit which includes the transcript of decedent's testimony in the criminal tax trial of his son, John A. Wedum. The objection was made because, according to petitioner, the testimony was offered for the sole purpose of supporting inclusion of the trust assets in the gross estate under section 2033. Petitioner alleges that because section 2033 was not raised by respondent in the pleadings, it is beyond the scope of petitioner's motion for partial summary judgment. We disagree. In its amended estate tax return, petitioner included the trust assets in decedent's gross estate and claimed that the estate should be allowed a deduction pursuant to section 2053. Respondent, in his notice of deficiency, accepted petitioner's treatment of the trust assets as part of the gross estate but denied the validity of the claims asserted under section 2053. In its petition, the estate alleged for the first time that the assets should be excluded from the gross estate. Respondent, in his answer, denied generally that these trust assets should be excluded from the gross estate. We believe that petitioner's *375 allegation, made in its petition, that the trust assets are not includable in the decedent's gross estate raises the issue of includability under all of the pertinent Code provisions, including section 2033. Furthermore, we think the portion of the affidavit containing the transcript of the decedent's testimony is relevant to respondent's argument under section 2036(a)(1) as well. Consequently, we overrule petitioner's objection to the admission of the transcript of decedent's testimony. [7]
Section 2036(a) reflects a "legislative policy of subjecting to tax all property which has been the subject of an incomplete inter vivos transfer." United States v. O'Malley,383 U.S. 627, 631 (1966). As stated in Commissioner v. Estate of Church,335 U.S. 632, 645 (1949): [A]n estate tax cannot be avoided by any trust transfer except *376 by a bona fide transfer in which the settlor, absolutely, unequivocally, irrevocably, and without possible reservations, parts with all of his title and all of his possession and all of his enjoyment of the transferred property. After such a transfer has been made, the settlor must be left with no present title in the property, no possible reversionary interest in that title, and no right to possess or to enjoy the property then or thereafter. * * * Section 2036(a)(1) provides for inclusion in the gross estate of all property transferred by decedent, "by trust or otherwise, under which he was retained for his life or for any period not ascertainable without reference to his death * * * (1) the possession or enjoyment of, or the right to the income from, the property * * *." It is well settled that section 2036(a)(1) deals with two alternative notions: retention of "possession or enjoyment" and retention of the "right to income." McNichol's Estate v. Commissioner,265 F.2d 667 (3d Cir. 1959), affg. 29 T.C. 1179 (1958). The "right to income" language was *377 added to section 2036(a)(1) to apply in those circumstances in which the decedent was entitled to the income from the transferred property even though he does not in fact receive it. H. Rept. No. 708, 72d Cong., 1st Sess. (1932), 1939-1 C.B. (Part 2) 457, 490-491; S. Rept. No. 665, 72d Cong., 1st Sess. (1932), 1939-1 C.B. (Part 2) 496, 532. Petitioner argues that the trust documents do not, on their face, reserve to the decedent any power over the trust assets other than the power, as trustee, to invest the trust assets. This assertion, however, ignores the decedent's actual control over these trusts outside the confines of the trust instruments. The decedent's possession or enjoyment of the trust assets for purposes of section 2036(a)(1) need not be pursuant to a right specifically retained in the trust document. Skinner's Estate v. United States,316 F.2d 517 (3d Cir. 1963). Moreover, the interest retained need not be one that is legally enforceable by the decedent. Estate of Kerdolff v. Commissioner,57 T.C. 643 (1972); *378 Estate of Barlow v. Commissioner,55 T.C. 666 (1971). In Estate of McCabe v. United States,475 F.2d 1142 (Ct. Cl. 1973), the decedent transferred property to a trust that provided for the trust income to be paid to his wife for life with the remainder to his children. The trust was intended to be irrevocable and decedent did not, by the terms of the trust document, retain an interest that would cause section 2036 to be applicable. However, the evidence indicated that the decedent's wife never received any trust income and that the trustee, in fact, distributed income and corpus at decedent's direction primarily for decedent's own personal benefit. In addition, the beneficiaries had only a very nebulous awareness of the trust and its terms. According to the Court of Claims, although the decedent did not, by the terms of the instrument of transfer, expressly retain a life interest, "[a] retention of the 'possession or enjoyment of, or the right to the income from, the property' may be inferred from the circumstances attendant upon the transfer *379 and the manner in which the transferred property is used." Estate of McCabe v. United States,supra at 1147 (citations omitted). See Skinner's Estate v. United States,supra;McNichol's Estate v. Commissioner,supra;Estate of Hendry v. Commissioner,62 T.C. 861, 872 (1974); Estate of Kerdolff v. Commissioner,supra.
Petitioner cites United States v. Byrum,408 U.S. 125 (1972), in support of its assertion that the trust assets are not included in the gross estate pursuant to section 2036(a)(1). The facts in Byrum, however, are clearly distinguishable from those in the instant case. Mr. Byrum created an inter vivos trust to which he transferred shares of stock in three closely-held corporations. Prior to the transfers, he owned 71 percent of the outstanding stock of each of these corporations. The beneficiaries of the trust consisted of Mr. Byrum's children. The trust agreement designated an independent corporation as sole trustee with extensive powers with regard to the control and management of the trust property. The trustee had sole discretion *380 to exercise these broad powers subject, inter alia, to the settlor's retained right to vote the shares of stock held by the trust estate. The Supreme Court held in Byrum that the rights reserved by the decedent with respect to the transferred stock did not constitute a retained enjoyment thereof. The Supreme Court emphasized that Mr. Byrum's de facto control over the trust income was effectively neutralized by the legal and practical retraints placed upon him. As a member of the board of directors of each corporation, Mr. Byrum was vested with broad discretion in determining "whether when, and what amount" of dividends would be paid. United States v. Byrum,supra at 143. As a board member, however, Mr. Byrum was bound by fiduciary duties to act in a manner that was in harmony with the best interests of the corporation and their shareholders. A breach of these fiduciary duties would have subjected Mr. Byrum to a shareholders' derivative lawsuit. Additionally, minority shareholders and a cause of action under State law if Mr. Byrum abused his fiduciary duties as a majority shareholder. These duties so modified the rights retained by the decedent that, *381 according to the Supreme Court, the retained rights were insufficient to cause inclusion of the stock in his gross estate under section 2036(a). The facts in Byrum contrast sharply with those in this case. Specifically, there were no fiduciary restraints on Mr. Wedum's possession of the trust assets after his resignation as trustee, whereas in Byrum there was an independent corporate trustee who ultimately controlled the flow of income to the trust beneficiaries. In addition, the independent corporate trustee in Byrum was a minority shareholder who had both the right and duty to hold Mr. Byrum responsible for any wrongful or negligent act as a controlling shareholder or as a director of those corporations. Furthermore, the Government's argument in Byrum focused upon the decedent's retention of voting rights in the stock transferred (and the resulting corporate control associated therewith), and not the actual stock (property) itself. In the present case there is a genuine issue of material fact as to whether decedent retained possession or enjoyment of the very property transferred (i.e., cash, bonds, etc.), thereby invoking the applicability of section 2036(a)(1). *382 "The statutory language [of section 2036(a)(1)] plainly contemplates retention of an attribute of the property transferred--such as a right to income, use of the property itself, or a power of appointment with respect either to income or principal." United States v. Byrum,supra at 149. (Fn. ref. omitted; emphasis added.) Here the decedent established six inter vivos trusts for the benefit of various family members.The trusts were by their terms irrevocable, and no beneficial interest was specifically retained by him. There is, however, evidence to suggest that the assets associated with all six trusts were continuously retained by decedent in his own personal account over which he had sole signatory authority. He testified as follows in Federal District Court that he commingled the trust assets with his own personal and business assets: Q. Before we examine this document, its true, isn't it that the trust did not have an account of its own, a bank account? A. No. Q. It was in that Home Account is that right? * * * A. Yes. Q. *383 Your own account? A. Yes. Q. In which all monies for all enterprises went, is that not right? A. Yes. [Trial transcript, supra at pp. 123-124.] When these six trusts were initially established, decedent's continued possession of these assets was arguably in harmony with his role as trustee. Following his formal resignation, however, respondent alleges that no assets were never transferred to the successor trustee, John A. Wedum, and instead these trust funds remained in the decedent's exclusive possession and control. In our judgment, there exists a genuine issue of material fact regarding whether decedent retained "possession or enjoyment" of the trust assets. As noted above, a retention of the possession or enjoyment of the property may be inferred from the circumstances surrounding the transfer and the way in which the transferred property is used. Estate of McCabe v. United States,475 F.2d 1142, 1147 (Ct. Cl. 1973). The decedent's mere retention of these trust assets in his personal bank account commingled with his personal funds creates a strong inference that his possession was a beneficial one. This is especially true in *384 the context of intra-family trusts similar to the ones that exist in this case. Decedent presumably could have borrowed from these trust funds, or used the trust assets as collateral to obtain loans from other sources. In any event, his net worth was notably increased by virtue of the fact that these trust funds remained in his personal account. There is no evidence to indicate that any person, other than decedent, had authority to withdraw trust funds from this account. The decedent's admitted retention of these assets placed these funds effectively beyond the reach and control of the trustee named in the trust instruments. Thus, the focus at trial should be on the question of whether decedent continued, following the transfers, to treat the trust assets as his own, to use the assets for business or personal purposes, and to retain generally the possession, enjoyment, and income therefrom. We think there is also a genuine issue of material fact as to whether an informal agreement existed between the decedent-settlor and the decedent's successor-trustee (and co-trustee in the case of the John A. Wedum and Carola Palm Trusts), whereby decedent was to retain "possession or enjoyment" *385 of the trust assets. The existence of such an agreement or understanding would be sufficient to cause the value of the property to be included in decedent's gross estate under section 2036(a)(1). Estate of Paxton v. Commissioner, 86 T.C.     (April 28, 1986); Skinner's Estate v. United States,316 F.2d 517 (3d Cir. 1963); McNichol's Estate v. Commissioner,265 F.2d 667 (3d Cir. 1959), affg. 29 T.C. 1179 (1958); Estate of McCabe v. United States,supra.[8] The determination, at trial, of whether such an implied understanding existed between the parties requires a consideration of all the facts and circumstances surrounding both the alleged transfers and the subsequent use of the trust assets. Estate of Paxton v. Commissioner,supra.Estate of Rapelje v. Commissioner,73 T.C. 82, 86 (1979). [9]
*386 Accordingly, on this record, we hold that petitioner has failed to carry its burden of showing that there is no genuine issue as to any material fact and, therefore, it is not entitled to judgment as a matter of law. [10] Petitioner's motion for partial summary judgment will be denied. An appropriate order will be entered.
Footnotes
1. Unless otherwise indicated, all references to Rules are to the Tax Court Rules of Practice and Procedure.↩
2. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect on the date of decedent's death.↩
3. Article three of each of the Palm Trust instruments provides in pertinent part as follows: [T]he Trustee * * * shall have full power and authority in his continuing discretion: 1. To receive any property, either real or personal from any other source and to retain cash or other assets for so long as he deems advisable, and to sell, exchange, lease or otherwise dispose of the same for terms within or extending beyond the termination of this trust, and to receive from any source additional properties acceptable to him. 2. To retain and to continue to hold, so long as he deems advisable, as part of the trust estate any assets delivered to the Trustee by the Trustors without liability for loss or depreciation by so doing. 3. To invest and reinvest in, or exchange assets for, any securities and properties he deems advisable, including, without limiting the generality of the foregoing, common and preferred stocks, whether or not of the kind or class authorized by law, and to commingle for investment all or any part of the funds of this trust in any common trust fund or funds maintained by the Trustee. * * * ↩
4. The relevant provision found in each of the Palm Trust documents provides as follows: ARTICLE II. The Trustee shall collect, receive, receipt for and manage the principal and income of the trust estate and, after paying the proper charges and expenses of the trust, the Trustee shall hold and distribute the principal of and the net income from the trust estate as follows: A. The Trust estate shall be vested forthwith in the said      , and the trust estate shall be retained in trust by the Trustee and the Trusteeshall pay to the said      , for his sole use and benefit,for any purpose whatsoever until said      attains the age of twenty-one (21) years, any part or parts of the income or principal; provided, however, that said payments of any income or principal to or for the benefit of the said     are not intended to be, or shall any payment be made in lieu of or in discharge of, any parental obligation of the said Trustors or either of them. Any income from the trust not paid to or applied for the benefit of the said      shall be accumulated by the Trustee and added to the principal.↩ [Emphasis added.]
5. We note that there is no evidence to indicate that the decedent resigned as trustee of the Carola Palm Trust.↩
6. According to the following testimony of decedent, the trust assets were to be accumulated until his death at which time they were to pass to the trust beneficiaries. Well, those Trusts were set up for this ultimate benefit as a tax expediency to accumulate funds from which they would become heirs to at the time of my passing, and they weren't for present use, and Timmy [Carola Palm] got the idea that since they existed they were available immediately * * *, and I tried to make her understand that the Trust wasn't for present use. * * *. So I told her that the Trusts were only to be used for the time of my eventual--my death, that they were not for present use * * *. [Transcript of Maynard C. Wedum's testimony given in Marcy 1977 in the United States District Court, District of Minnesota, p. 124-125.]↩
7. We note that petitioner objected to the introduction of the transcript of the decedent's testimony solely on the grounds that such evidence was offered in support of an issue that was not raised in the pleadings by respondent.↩
8. We express no view with regard to whether a genuine issue of material fact exists concerning the inclusion of the trust assets in decedent's gross estate pursuant to secs. 2036(a)(2), 2033 and 2038↩ as alternatively alleged by respondent. 9. Sec. 20.2036-1(a), Estate Tax Regs., provides in pertinent part as follows: An interest or right is treated as having been retained or reserved if at the time of the transfer there was an understanding, express or implied, that the interest or right would later be conferred.↩
10. Respondent objected to the admission into evidence of the estate tax examination report prepared by the Internal Revenue Service for the Estate of Maynard C. Wedum. The report was offered by petitioner in support of its assertion that sec. 2036 constitutes the sole issue framed by respondent's notice of deficiency. Because we find there to be a genuine issue of material fact with regard to the inclusion of the trust assets under sec. 2036(a)(1)↩, we find it unnecessary to address respondent's objection to the admissibility of the examiner's report.